## WESTBURY v. SIMMONS.

1. EVIDENCE—TRANSACTIONS WITH DECEDENT.—Admissions of assignee
   against his interest of transactions with deceased assignor are com-
   petent, under sec. 400 of Code.
2. IBID.—ASSIGNOR AND ASSIGNEE.—DECLARATIONS of assignor against
   interest are admissible against his assignee.
3. IBID.—ASSIGNMENT—PAROL.—There being no question as to an
   assignment, there is no need to produce it before offering parol evi-
   dence as to the purpose of the assignment.
4. IBID.—ASSIGNOR AND ASSIGNEE.—DECLARATIONS of assignor in pres-
   ence of assignee are competent against assignee.

5. IBID.—IBID.—TRANSACTIONS WITH DECEDENT.—An assignee may testify as to transactions with his deceased assignor, when it does not *promote* his interest.

6. EXCEPTION too general.

7. APPEAL.—Mistakes of Circuit Judge as to contents of pleadings cannot be made a ground of appeal unless his attention be called to it at the time.

8. ASSIGNOR AND ASSIGNEE.—CODE, 133, does not apply in an action by the personal representation of a deceased assignor against a subassignee.

9. IBID.—The second assignee of a life insurance policy takes it subject to the set-offs and defenses existing between the first assignor and assignee, unless there be something on the face of the assignment to ·mislead the second assignee.

10. IBID.—PURCHASER FOR VALUE—ESTOPPEL.—An assignee does not come under the protection of the rule of law applicable to a purchaser for value without notice, but may show such acts on part of assignor as estop him from asserting his legal rights.

11. APPEAL.—Questions not presented by pleadings, and in no way connected with issues upon which the jury rendered the verdict, will not be considered on appeal.

Before KLUGH, J., Charleston, April, 1899.    Affirmed.

Action by Anna F. Westbury, administratrix of Wm. H. Rentz, against Benjamin I. Simmons. From judgment on verdict for plaintiff, defendant appeals.

*Messrs. Buist & Buist,* for appellant, cite: *As to admission of incompetent evidence:* 2 McC., 160; 32 S. C., 547; 30 S. C., 149; 93 U. S., 382; 33 S. E. R., 388; 22 S. C., 198; 30 S. C., 150; 47 S. C., 493.    *As to charge on facts:* 47 S. C., 488; 27 S. E. R., 485, 526, 648, 659; 29 S. E. R., 209; 31 S. E. R., 62.    *As to rights of assignor under assignment:* Code, 133; 31 S. C., 389; 38 S. C., 139; 45 S. C., 86; 27 S. C., 227; 49 S. C., 477; 58 Penn., 214; 22 S. C., 550; 3 Strob., 267; 23 S. C., 501; 101 U. S., 575; 57 N. Y., 229; 47 Id., 421; 22 Id., 535; 46 Id., 325.    *As to purchase for value by defendant:* 2 Rich., 113; 6 S. C., 168; 102 U. S., 46; L. R., 10, Eq., Q. B., 92; 2 DeG. & J., 21; 55 N. Y., 41. *As to effect of fraud on part of assignor:* 1 Johns. Ch., 354;

19 S. C., 402; 26 S. C., 511; 2 Rich., 113; 102 U. S., 45; 13 Rich., 330. *As to who may receive life insurance policy as assignee:* 85 N. Y., 598; 138 Mass., 24; 94 U. S., 457; 117 U. S., 597; 51 S. C., 105.

*Messrs. Legare & Holman,* contra, cite: *As to transactions with decedent:* 20 S. C., 572; 47 S. C., 488; 53 S. C., 22; 6 S. C., 82. *As to declarations of holder of chose in action against assignee:* 7 Rich., 4; 2 McC., 241; 2 Rich., 168; 53 S. C., 76. *As to evidence to show purpose of assignment:* 22 S. C., 39. *Policy chose in action:* 42 S. C., 121. *As to rights of assignee under assignment:* 38 S. C., 148; 45 S. C., 86; 22 S. C., 29; 49 S. C., 469. *As to assignment of insurance policies:* 51 S. C., 110.

April 18, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to recover from the defendant the sum of $4,000 and interest, less the sum of $159.20 advanced by him to pay the premium on a policy of insurance on the life of Wm. H. Rentz. In the first paragraph of the complaint it is alleged that Wm. H. Rentz, on the first day of November, 1890, procured a policy of insurance on his life by payment of a premium of $159.20, and agreed to pay a like sum thereafter annually to keep the same in full force and effect. The answer admits this allegation. The policy was made payable to Wm. H. Rentz, his executors, administrators or assigns. The third paragraph of the complaint alleges that Rentz assigned the policy to A. T. Rion, on 15th January, 1891, upon condition that he would pay the annual premiums thereon, and upon the further condition that he was only to hold the said policy as collateral security for money expended by him in paying the premium on same, with interest thereon. In paragraph 4 the complaint alleges that A. T. Rion, on the 31st October, 1891, assigned the said policy to the defendant, upon condition that he would pay the annual premiums, and upon further agree-

ment that he was to hold the said policy as collateral security to reimburse himself for said premiums, with interest thereon.    It further alleges that the defendant had full notice of the conditions upon which the policy was delivered to A. T. Rion.

The defendant denies the allegations contained in the third and fourth paragraphs of the complaint, and alleges that the assignment from Rentz to Rion was absolute and not conditional, and denies further that he had any knowledge of the alleged conditions upon which the policy was assigned to Rion.    He further alleges that the policy was thereafter assigned to him by Rion as collateral security for all the indebtedness due him by Rion.    The defendant admits collecting the money on the policy of insurance, and alleges that it was applied toward extinguishing the indebtedness of Rion to him.    The jury rendered a verdict in favor of the plaintiff for $5,336.42.

The defendant appealed upon numerous exceptions, the first of which is as follows: "1.  Because his Honor erred in admitting, under objection, the plaintiff, Anna F. Westbury, to testify that 'He (Rion) told me that the policy was transferred from my brother to him to hold as collateral— that the policy was.'  'Mr. Rion told me that my brother transferred the policy to him to hold as collateral; that he didn't have the money to pay the premium then, just to hold it till he could get the money to pay him back the premium.'    Whereas, he should have held that the evidence was inadmissible: a.  Under section 400, Code.  b. Because contrary to the allegata of the complaint.    c.  Because it involved a statement of the declaration or transaction of Rentz, deceased, with a person other than the witness, made in the absence of the defendant."    The case of *Robinson* v. *Robinson,* 20 S. C., 567, shows that the testimony was not incompetent, under section 400 of the Code, because it was against the interest of A. T. Rion.    The word "affect" is used in the sense of "promote."    Subdivision "b" does not specify in what particulars the testimony was contrary to

the allegations of the complaint, and is, therefore, too general to be considered.

We next proceed to a consideration of subdivision "c." The rule is thus stated by Mr. Justice Richardson, speaking for the Court, in *Snelgrove* v. *Martin,* 2 McC., 241 : "I take the general rule of the common law to be, that whenever the act or declaration of a party then interested, would be evidence against himself, such will be evidence against his subsequent assignee, or party claiming under him." To the same effect are the cases of *Land* v. *Lee,* 2 Rich., 168, and *Crawley* v. *Tucker,* 4 Rich., 560. It does not appear from the testimony whether Rion had an interest in the policy of insurance at the time he made the alleged declarations, but this was not urged as an objection to the testimony. The foregoing authorities show that the objections to the testimony were properly overruled.

The second exception is as follows: "2. Because his Honor erred in admitting, under objection, the witness, J. O. Reed, to testify, after stating that his knowledge was derived from the declaration of Rentz and Rion, that 'The assignment was made for the purpose of securing Rion.' 'The object of the assignment was to secure Rion for the payment of the premiums on the policy that Rentz had taken in the Mutual Life ;' whereas, he should have held : a. That the assignment being in writing, should first be produced as the best evidence of what it was. b. Because it involved the declaration or statement of Rentz, deceased, made in the absence of defendant." It was not made a question that the assignment to Rion was absolute on its face, but the respondent contended that although it appeared to be an absolute transfer, it was only intended as a mortgage. As there was no question in regard to the assignment, as it appeared upon its face, there was no necessity to produce it before offering the said testimony. Furthermore, the appellant afterwards offered in evidence the original policy, with the assignments thereon. The objection stated in the first subdivision cannot be sustained.

The second subdivision will next be considered. Not only was the testimony the declarations of a party while he had an interest, but made in the presence of his assignee. Section 191 of Greenleaf on Evidence shows that the declarations were admissible as original evidence, and it was not necessary to call as a witness the party by whom they were made. This objection cannot be sustained.

The third exception is as follows: "3. Because his Honor erred in admitting, under objection, the witness, A. T. Rion, to testify: 'I advanced the money to pay the first premium;' whereas, he should have held that the evidence was inadmissible: a. Under section 400, Code. b. Because contrary to the allegata of the complaint. c. Because it involved a statement of a declaration of, or transaction with, the deceased, made in the absence of the defendant." In the case of *Norris* v. *Clinkscales*, 47 S. C., 488, his Honor, Judge Benet, makes the most satisfactory analysis of the said section of the Code which we have seen, in the following manner: "The first part of it reads as follows: 'That (1) no party to the action or proceeding; *nor* (2) any person who has a legal or equitable interest which may be affected by the event of the action or proceeding; *nor* (3) any person who, previous to such examination, has had such interest, however the same may have been transferred to, or come to, the party to the action or proceeding; *nor* (4) any assignment of anything in controversy in the action, shall be examined (a) in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, as (b) a witness against a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, or survivor of such deceased person or assignee, or committee of such insane person or lunatic, when (c) such examination or any judgment or determination in any such action or proceeding, can in any manner affect the interest of such witness or the interest previously owned or represented by him.' For the purpose of simplifying this very complex

provision of the Code, we have inserted the figures 1, 2, 3 and 4, and the letters *a, b* and *c.* A careful analysis of this *proviso* of section 400 shows that its purpose, as a rule of evidence, is to exclude the testimony of a witness who may belong to *any one, or more, or to all,* of the classes indicated by the figures 1, 2, 3, and 4, but only when his testimony belonged to *all three* of the kinds described in the divisions *a, b* and *c.* It describes four classes of persons and three characteristics of testimony. The four classes of persons are these: 1. A party to the action or proceeding. 2. A person having an interest which may be affected by the event of the trial. 3. A person who has had such an interest, but which has been in any manner transferred to, or has in any manner come to, a party to the action or proceeding. 4. An assigneé of a thing in controversy in the action. The three characteristics of the testimony are these: *a.* In regard to any transaction or communication between the witness and a person deceased, insane or lunatic. *b.* Against a party prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or as assignee or committee of such insane person or lunatic. *c.* When the present or previous interest of the witness may in any manner be affected by the testimony or by the event of the trial. It will be thus seen that to justify the exclusion of testimony under this *proviso* of section 400, it should be shown to the satisfaction of the trial Judge, *first,* that the witness belonged to one or more or to all of the four classes of persons whose testimony may under certain circumstances be excluded; and *secondly,* that his testimony partakes of not merely one or two of the disqualifying characteristics classified under *a, b* and *c,* but that it possesses all three of those characteristics. To illustrate: A witness may belong to all four classes of persons described under 1, 2, 3 and 4, and his testimony may fall under the divisions *a* and *b,* but if it does not also fall under subdivision *c,* then it would be error to exclude it." A. T. Rion came within the provisions of subdivision 3, and also under sub-

divisions *a* and *b,* but not under *c,* as the testimony was not offered for the purpose of "promoting" the interest previously owned by the witness, and such was not its tendency. The other subdivisions are disposed of by what was said in considering the other exceptions.

The fourth exception is as follows: "4. Because his Honor erred in admitting, under objection, the witness, A. T. Rion, to testify: 'I asked him (Simmons) to pay the second premium to keep the policy from lapsing, as I had paid the first premium, to keep from losing it, if the policy lapsed;' whereas, he should have held that so much of said evidence as states that the witness paid the first premium was contrary to the allegata of the complaint." This exception is too general for consideration. Furthermore, if there was error, it was harmless.

The fifth exception is as follows: "5. Because his Honor erred in admitting, under objection, the witness, A. T. Rion, to testify: 'I do not recollect, except it was for the first premium, and I asked him to pay the second;' whereas, he should have held that as much of said evidence as relates to the witness paying the first premium was contrary to the allegata of the complaint." This is disposed of by what was said in considering the fourth exception.

The sixth exception is as follows: "6. Because his Honor erred in charging the jury as follows: 'Rion, while he held the policy, it seems, or it is admitted, paid one annual premium of $159.20;' in that: a. The same is a charge on the facts; and also, b. Such fact was not admitted." This expression was used by the Circuit Judge in stating the issues that arose under the pleadings, and not as intending to comment on the facts. He evidently simply made a mistake in names, as it was not denied that Simmons made the second annual payment. When a Circuit Judge makes a mistake as to what is in the pleading, his attention should be called to it, if it is to be made ground of appeal.

The seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and nineteenth exceptions were discussed

together by the appellant's attorneys, and will be considered together by this Court. They are as follows: "7. Because his Honor erred in charging the jury as follows: 'And that the rule of law was annexed, and still attaches to, all other kinds of choses in action, such as policies of insurance or non-negotiable papers, like a bond for the payment of money. A man may assign or transfer these articles, may sell them outright or may assign them conditionally, as he sees fit, but the rule of law attaches, that whenever he does assign or transfer them upon a condition, or reserving to himself any equity or right in it, any person who subsequently takes it, takes it subject to that equity or right which the original assignor retains in himself;' whereas, he should have qualified the same by saying: a. That section 133 of the Code was not applicable to the case at bar. b. That the rule was not applicable when the first assignor by his conduct was estopped. c. That the rule was not applicable when the first assignor, after knowledge of facts, which would make his conduct or silence a fraud as against a second assignee, remained thereafter silent, to the harm of the second assignee. d. That the rule was not applicable when the first assignor expressly or impliedly agreed that the second assignor should be treated with, by the first assignee, as if there were no existing equities between the first assignor and assignee. 8. Because his Honor erred in refusing to charge defendant's eleventh request to charge, reading as follows: 'If the jury believe that this policy of insurance was valid in its inception, then even if Rentz and Rion had agreed between themselves that the assignment to A. T. Rion should not be absolute, but that Rentz should retain some equity in the policy, nevertheless, if Rentz executed the assignment to Rion, dated January 15th, 1891, which I have instructed you would be on its face an absolute assignment, and delivered the policy so assigned to A. T. Rion, and the defendant herein was not advised of the said agreement, or put on inquiry concerning the same, and by reason thereof, on the faith of the said policy and assignment, he was led into dealing with the apparent owner,

the defendant will be protected, and both Rentz and the plaintiff, who is in law legally his privy, are estopped from setting up said agreement.' 9. Because his Honor erred in refusing to charge defendant's twelfth request to charge, reading as follows: 'It is now a well established principle that when the true owner of property holds out another, or allows him to appear as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they have directly dealt, but that they are derived from the act of the real owner, which precludes him from disputing, as against such third party, the existence of the right or power which he caused or allowed to appear to be vested in the party making the sale; and if such third party should agree to indulge such apparent owner, if his debtor generally, and does so indulge him for a reasonable time and receives the property as security, then the owner and his privies are estopped from repudiating the transaction.' 10. Because his Honor refused to charge defendant's thirteenth request to charge, reading as follows: 'If the jury believe that this policy of insurance was valid in its inception, then even if Rentz and Rion had agreed between themselves that the assignment to A. T. Rion should not be absolute, but that Rentz should retain some equity in the policy, nevertheless, if Rentz executed the assignment to Rion, dated January 5th, 1891, which I have instructed you would be on its face an absolute assignment, and delivered the policy so assigned to A. T. Rion, and Rentz had notice from Rion that he intended to use this policy, so assigned, for the purpose of pledging the same to B. I. Simmons, for a valuable consideration, and remained quiescent for the purpose of allowing Rion to use said policy as his absolute property, and keep from the knowledge of Simmons any latent equities existing therein, and the defendant herein was not advised of the said agreement, or put on inquiry concerning the same, and by

reason thereof, on the faith of the said policy and assignment, he was led into dealing with the apparent owner, the defendant will be protected, and both Rentz and the plaintiff, who is in law legally his privy, are estopped from setting up said agreement.' 11. Because his Honor erred in charging plaintiff's first request to charge, reading as follows: 'The jury is instructed that a policy of insurance is what is termed in law a chose in action, and any number of subsequent assignees take and hold the same subject to all of the equities, rights and defenses existing between the original parties to such assignment;' whereas, he should have qualified the same under the facts of this case by saying: a. That section 133 of the Code was not applicable to the case at bar. b. That the rule was not applicable when the first assignor by his conduct was estopped. c. That the rule was not applicable when the first assignor, after knowledge of the facts which would make his conduct or silence a fraud as against a second assignee, remained thereafter silent, to the harm of the second assignee. d. That the rule was not applicable when the first assignor expressly or impliedly agreed that the second assignee should be treated with by the first assignee as if there were no existing equities between the first assignor and assignee. 12. Because his Honor erred in charging plaintiff's second request to charge, reading as follows: 'The jury is instructed that a policy of life insurance is non-negotiable, and is classed and characterized as a chose in action, and is different in its nature and purport to that of the negotiable instrument, and the law which applies to negotiable instruments, such as promissory notes, does not apply to a policy of insurance, in that the subsequent assignees of the policy of insurance take it subject to all of the defenses, rights and equities existing between the original parties to such transfer;' whereas, he should have qualified the same under the facts of this case by saying: a. That section 133 of the Code was not applicable to the case at bar. b. That the rule was not applicable when the first assignor by his conduct was estopped. c. That the rule was not applicable when the first assignor,

after knowledge of facts which would make his conduct or silence a fraud as against a second assignee, remained thereafter silent, to the harm of the second assignee. d. That the rule was not applicable when the first assignor expressly or impliedly agreed that the second assignee should be treated with by the first assignee as if there were no existing equities between the first assignor and assignee. 13. Because his Honor erred in charging plaintiff's third request to charge, reading as follows: 'The jury is instructed that the statutes and decisions of this State recognize a well marked distinction in the rights of assignees between negotiable instruments and those which are not negotiable. A policy of insurance is a chose in action, and the assignees thereof are not protected by the equity of purchasers for valuable consideration without notice. Therefore, even if the jury should find that Benjamin I. Simmons was a *bona fide* assignee of this policy of insurance mentioned in the complaint, he took the same subject to all of the rights and equities that originally existed between William H. Rentz and A. T. Rion;' whereas, he should have qualified the same under the facts of this case by saying: a. That section 133 of the Code was not applicable to the case at bar. b. That the rule was not applicable when the first assignor by his conduct was estopped. c. That the rule was not applicable when the first assignor, after knowledge of the facts which would make his conduct or silence a fraud as against a second assignee, remained thereafter silent, to the harm of the second assignee. d. That the rule was not applicable when the first assignor expressly or impliedly agreed that the second assignee should be treated with by the first assignee as·if there were no existing equities between the first assignor and assignee. 14. Because his Honor erred in charging plaintiff's fourth request to charge, reading as follows: 'The jury is instructed that the defendant, Benjamin I. Simmons, a subsequent assignee of the policy of insurance herein, cannot claim the protection of the equity rule in favor of purchasers for valuable consideration without notice, but that he took

the assignment of said policy subject to all of the rights,
defences and equities that existed between the original
parties, to wit: William H. Rentz and A. T. Rion. And the
jury are further instructed that the administratrix of the
estate of William H. Rentz stands in his stead, and is en-
titled to all the rights and privileges that would have been
accorded to William H. Rentz by law;' whereas, he should
have qualified the same under the facts of this case by saying:
a. That section 133 of the Code was not applicable to the
case at bar. b. That the rule was not applicable when the
first assignor by his conduct was estopped. c. That the rule
was not applicable when the first assignor, after knowledge
of facts which would make his conduct or silence a fraud as
against a second assignee, remained thereafter silent, to the
harm of the second assignee. d. That the rule was not ap-
plicable when the first assignor expressly or impliedly agreed
that the second assignee should be treated with by the first
assignee as if there were no existing equities between the
first assignor and assignee. 19. Because his Honor erred in
charging the jury as follows: 'The defense of a purchaser
for value without notice is an equitable defense, Mr. Fore-
man and gentlemen, and is subject to that absolute rule of
law, that any assignee of a chose in action takes the same
subject to whatever rights existed between the original
parties to such chose in action. And so in this case, if you
conclude that there was any right or any reservation subsist-
ing between W. H. Rentz and A. T. Rion, the rule of law
protects that right and makes it superior to the claim of a
purchaser for value without notice, and in that view of the
case the doctrine of purchaser for value without notice would
have no application in this suit;' whereas, he should have
qualified the same under the facts of this case by saying: a.
That section 133 of the Code was not applicable to the case
at bar. b. That the rule was not applicable when the as-
signor by his conduct was estopped. c. That the rule was
not applicable when the first assignor, after knowledge of
facts which would make his conduct or silence a fraud as

against a second assignee, remained thereafter silent, to the harm of the second assignee.   d. That the rule was not applicable when the first assignor expressly or impliedly agreed that the second assignee should be treated with by the first assignee as if there were no existing equities between the first assignor and assignee."

We will first consider whether the provisions of section 133 of the Code are applicable to the case.   That section is as follows: "Sec. 133. In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to a set-off or other defense existing at the time of, or before the notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith and upon good consideration before due."   This section, it will be observed, refers to an action "by the assignee," and has no application to an action by the representative of an assignor against a subassignee.

We will next consider whether the action of Rentz was such as might reasonably have been expected to induce a person to purchase from his assignee, Rion, without making inquiry as to the consideration upon which the assignment was made by Rentz to Rion.   The form of the assignment is as follows: "For value received, I hereby assign and set over unto A. T. Rion all of my right, title and interest in the within policy.   Witness my hand and seal, this 15th day of January, A. D. 1891.   W. H. Rentz.   (L. S.)"   The principle is well settled in this State that the assignee of a non-negotiable chose in action takes it subject to the equities existing between the original parties. *Patterson* v. *Rabb,* 38 S. C., 138; *Gibson* v. *Hutchins,* 43 S. C., 287; *The British &c. Co.* v. *Smith,* 45 S. C., 83; *Pittman* v. *Raysor,* 49 S. C., 469.   The form of assignment by Rentz to Rion was such as is usually and ordinarily employed in transferring the title to non-negotiable instruments, and we see nothing upon the face thereof that could reasonably have been expected to mislead Simmons, he being presumed to

know that the assignee of a non-negotiable chose in action takes it subject to the set-offs and defenses existing at the time of the assignment.

The appellant's 15th exception is as follows: "15. Because his Honor erred in charging plaintiff's fifth request to charge, reading as follows: 'The jury is instructed that before a person can set up a *plea of bona fide* purchaser for value without notice, that it must be shown that the party claiming such benefit parted with money or some valuable consideration at the time of the transaction, and that where a party has already parted with property or money, such consideration cannot enter into and establish the plea of *bona fide* purchaser for value;' and, on the contrary, he should have held that where a party has already parted with property or money, the same should be a basis to a plea *of bona fide* purchaser for value, if there was thereafter an agreement to indulge the debtor generally, attended by actual forbearance for a reasonable time." The appellant has no right to complain of this charge, as it was too favorable to him. It allowed him the benefit of a plea to which he was not entitled. *Maybin* v. *Kirby,* 4 Rich. Eq., 105. Although an assignee does not come within the protection of the law as a purchaser for valuable consideration without notice, he, of course, can show such acts *as estop* the assignor from asserting his legal rights.

The sixteenth, seventeenth and eighteenth exceptions were considered together by the appellant's attorneys, and are as follows: "16. Because his Honor erred in charging plaintiff's sixth request to charge, reading as follows: 'The jury is instructed that Benjamin I. Simmons, the defendant herein, could not hold the policy of insurance mentioned in the complaint in this action for any more or any larger consideration than existed between Wm. H. Rentz and A. T. Rion, and, therefore, if the jury find that the only consideration which passed between the above named parties consisted of the payment of two premiums, then I charge you as a matter of law that Benjamin I. Simmons could only hold the policy

31—57

to the same extent and to the same amount;' and on the contrary he should have held that if the assignment of the policy from William H. Rentz to A. T. Rion had been *bona fide,* and not a device to evade the law, then the defendant could have received it absolutely, even if no consideration had passed between Rentz and Rion, even if it had been a gift from Rentz to Rion. 17. Because his Honor erred in charging plaintiff's seventh request to charge, reading as follows: 'The jury is instructed that if A. T. Rion and Benjamin I. Simmons bore no blood relation to Wm. H. Rentz, then they would have no insurable interest in the life of Wm. H. Rentz. The policy of insurance taken out in the name of such stranger, or transferred to such stranger, without some specific valuable consideration, would be void in law, as the same would be a mere wager policy;' and on the contrary he should have held that if the policy was valid in its inception, and its beneficiary, with the consent of the life and the insurer, transferred the policy absolutely to a third party even as a gift, such transfer would have been lawful, if not a mere device to evade the law against wager policies, and on that question of fact the jury alone could pass. 18. Because his Honor erred in charging plaintiff's eighth request to charge, reading as follows: "The jury is instructed that if a person procures a policy on the life of another person who bears no blood relation to the person procuring such insurance, or if such person procures the assignment of the policy from a person who bears no blood relation to such assignee, then I charge you as a matter of law that such policy would be held to the extent of the money or other valuable consideration actually advanced for the procurement of such policy or the assignment thereof;' and on the contrary he should have held that if the policy was valid in its inception, and the beneficiary, with the consent of the life and the insurer, transferred the policy absolutely to a third party even as a gift, such transfer would have been lawful, if no mere device to evade the law against wager policies, and on that question of fact the jury alone could pass." The question presented by these

exceptions do not arise under the pleadings. Moreover, the jury returned a verdict in favor of the plaintiff on issues in no way connected with the questions raised by these exceptions. While they will not be considered, for the reasons just stated, we may say, however, that this subject has been fully discussed in the recent case of *Crosswell* v. *Association,* 51 S. C., 103.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.