## BRICKMAN v. SOUTHERN RAILWAY.

1. EVIDENCE descriptive of the mangled condition of the body in a railroad wreck is here responsive to the allegations of the complaint and relevant to show the surrounding circumstances under allegations for punitive damages.
2. APPEAL—EXCEPTION.—If trial Judge err in stating issues to jury, his attention should then be called to it, if it is to be made the basis of an exception.
3. CHARGE—JUDGE—ATTORNEYS.—An agreement between attorneys in a cause in writing formerly introduced in evidence should be construed by Judge in his instructions to the jury.
4. DAMAGES—LORD CAMPBELL'S ACT.—MENTAL ANGUISH AND LOSS OF COMPANIONSHIP of husband to wife and child may be allowed by jury under Lord Campbell's Act, and here facts warrant the allowance.
5. DAMAGES—PUNITIVE.—Portions of the charge excepted to taken in connection with the other parts does not confine the jury to a mere knowledge by officers of railroad company of the defect in the trestle as a basis for punitive damages.
6. CHARGE—RAILROADS—REQUEST.—If appellant desired the Court to instruct jury what officers should have knowledge of defect in roadbed, and what length of time such knowledge should have been in possession of such officers, it should have so requested.
7. DAMAGES—PUNITIVE—CHARGE.—To instruct jury that they may say if failure to repair a roadbed with knowledge of its defects was a wanton, wilful and high-handed invasion of engineer's rights is not instructing jury what facts constitute wantonness.

8. IBID.—IBID.—LORD CAMPBELL's ACT, CODE 1902, 2851-2, confers the right to punitive damages in proper cases.

9. APPEAL—CONSTITUTION.—Question as to the constitutionality of a statute, on which trial Judge was not requested to rule and not ruled on, is not properly before this Court for consideration.

10. APPEAL.—This Court cannot consider an exception assigning as error that amount of damages assessed was excessive.

11. NEW TRIAL.—Statements of trial Judge in refusing motion for new trial that defendant admitted liability for actual damages; motion was only to reduce the verdict; not an error was noted during trial; counsel made no complaint as to errors of law; trestle was built in 1887 of old field pine; officers and servants of defendant knew of defects in the trestle; details of the wreck were exceedingly harrowing; injuries to wife and child from loss of companionship of husband and father could not be calculated; exemplary damages may be given under Lord Campbell's Act, held not grounds for reversal.

12. REHEARING refused.

Before WATTS, J., York, November Term, 1904. Affirmed.

Action by Dorothy H. Brickman, admx., against Southern Railway. From judgment for plaintiff, defendants appeal on the following exceptions:

"1. Because the presiding Judge erred in admitting, over the objection of defendants' counsel, the testimony of Dr. Miles Walker, which said testimony was as follows: 'Q. Did you on that occasion (coroner's inquest) see the remains of Mr. Brickman? A. Yes, sir. Q. Doctor, please describe their condition. A. Mr. Brickman— (Mr. Spencer: We object to that as irrelevant. It has come out time and time again, and we didn't object to it then. We object now. It doesn't bear on the issue at all. Mr. McCaw: Only on wounded feelings. The good wife and dependent children were informed of their ancestor's remains, so much so they couldn't look at them. Mr. Legare: We have a right to prove that his death was caused by the wreck, and I know no better witness than a physician. Mr. Spencer: The death is admitted in the answer. The Court: In addition to neg-

ligence, they alleged wantonness and gross negligence. Go ahead.) Q. Describe the condition of Mr. Brickman's remains? A. Mr. Brickman was removed from underneath the engine, or possibly the boiler—I think, the boiler. The boiler had turned down the creek somewhat, and the legs of the two men were sticking out. The body of one was almost concealed, but the feet and part of the legs sticking out, and remained in that condition until about dusk. I think the engine was removed from the body about dusk. When the engine was removed, the body was brought upon the hillside. We had it carried on the hillside and identified by some one as Mr. Brickman. His watch was taken from his pocket and had stopped at a certain time. His bowels— he was very much mashed, crushed and cooked. His mouth was open, with a sardonic grin—a very hideous appearance of the face, and very much swollen at that time. The flesh seemed to be cooked; the bowels hanging out. Q. Doctor, were the remains shipped in that condition to Blacksburg? A. I don't know, sir. I left Mr. Brickman on the side of the hill when the inquest was finishing. We had the remains brought from the swamp, the mud; it was muddy and swampy where the engine was—at least wet, and the engine had pressed it down. We had it taken away from there and brought it on the side of the hill, where we could view the body better. Q. Where was the inquest held? A. The inquest was held at the wreck, and Doctor McDowell and myself left the remains there, and I didn't see him again.'

"The error being that the condition of Mr. Brickman's remains was not responsive to the issue of negligence, or gross negligence, or wantonness; nor was it responsive to the issue of wounded feelings, especially as the testimony entirely failed to show that there had been any injury from wounded feelings.

"2. Because the presiding Judge, in his charge to the jury, erred in using the following language: 'Later on they come into Court and admit that Mr. Brickman was in their employment as a locomotive engineer, and that he came to

his death through negligence on their part. Then they say they admit that he died while in their employment, and they are willing for the jury to assess any actual damages that Mrs. Brickman has sustained by reason of her husband's death.'

"The error being—

"(a) That there was no admission, either in the pleadings, or in any paper submitted to the jury or otherwise, that the deceased came to his death through negligence on the part of defendants.

"(b) That if by such charge his Honor alluded to the letter of May 23d, 1904, the same had not been admitted in evidence, nor by its terms could it have been.

"(c) That, even if the said letter had been properly offered and received in evidence, it was not by its terms subject to construction by the presiding Judge; nor did his Honor have the right to charge the jury with reference thereto, the same being a mere matter of private arrangement between counsel of the respective parties, and intended by them as such.

"(d) That, even if the said letter was properly in evidence, his Honor misconstrued the same as an admission of negligence, and charged the jury in terms to that effect.

"(e) That, in using such language in reference to said letter or otherwise, his Honor charged upon the facts.

"3. Because the presiding Judge erred in charging the jury: 'I charge you as a matter of law, that under the admission in this case you are bound to find some damages for the plaintiff, whatever actual damages she has sustained by the death of Mr. Brickman;' the error being that his Honor had considered the letter of May 23d, 1904, as a part of the testimony in the case, and assumed to construe the same, and to charge the jury with reference thereto, when, as a matter of fact, the same, by its terms, was not to be brought to the attention of the jury until after all the testimony was in, and then it was to be read to the jury by the counsel for plaintiff, not as evidence, but as an agreement made between the respective counsel in the case.

"4. Because the presiding Judge erred in charging the jury that in estimating the actual damages done to the beneficiaries.: 'You can also take into consideration any injury which these parties have sustained by reason of mental anguish or suffering by reason of the death of Mr. Brickman, and you also take into consideration any damages, if any, that they have sustained by loss of his companionship as a father and as a husband;' the errors being: (a) that there was no evidence of injury either from (1) mental anguish or suffering, physical or mental, or from (2) loss of companionship, and (b) that the statute does not cover any such element of damage.

"5. Because the presiding Judge erred in charging the jury as follows: 'Now, I charge you as a matter of law, if the testimony satisfies you that the authorities of this road knew that the roadbed or any of its trestles or anything of the sort were insufficient and unsafe, then it is for you to say whether that was a wanton, wilful, reckless invasion of the plaintiff's rights;' the errors being (a) that his Honor confined the consideration of the jury to mere knowledge of the condition of the road, and (b) that his Honor failed to point out to what authorities such knowledge should have been traced, or for what length of time such knowledge should have been in possession of the defendants' officers in charge of such trestles or roadbed.

"6. Because the presiding Judge erred in charging the jury that if the defendants' officers 'had any conscious knowledge, that is, if they had any knowledge of the fact that this roadbed was in an unsafe and unsuitable condition, and not in a reasonably safe and suitable condition, and they didn't repair it, it is for you to say whether that was a wanton, wilful and high-handed invasion of Brickman's rights;' the errors being: (a) in not charging the jury with regard to the time such knowledge should have come to the authorities, and the time in which they should have repaired it, and (b) in confining and limiting the consideration of the jury to mere knowledge of the fact of the non-repair.

"7. Because the presiding Judge erred in again charging the jury: 'So, if the testimony satisfies you that this roadbed was in an unsafe and unsuitable condition, that it was not reasonably suitable and safe for the purposes of operating cars, it being the duty that the railroad owes to its employees, to keep its roadbed in a reasonably safe and suitable condition and in reasonably safe and suitable repair, it is for you to say, if they had knowledge of these facts and didn't repair the railroad, whether or not it is a wanton and wilful and high-handed invasion of Brickman's rights;' the error being in allowing the jury, from the mere fact of knowledge that an appliance or means was in an unsafe and unsuitable condition, to find punitive damages for not repairing the same.

"8. Because the presiding Judge erred in charging the jury: 'Now, I charge you wherever there is a wanton, wilful, intentional, outrageous or high-handed invasion of a person's rights, that they are entitled not only to recover such actual damages as they have sustained, but such damages in the way of punishment as the jury see fit to inflict, under the testimony in the case;' the error being in holding that the plaintiff was entitled, as of right, to punitive damages; whereas, it is submitted that the matter of punitive damages is purely a question of discretion for the jury under the statute.

"9. Because the presiding Judge erred in submitting to the jury the question of exemplary damages or punitive damages at all, inasmuch as it is submitted that so much of the statute, approved February 27th, 1902 (XXIII. Stat., page 1071), as allows such damages, contravenes the Constitution of this State and the Constitution of the United States, in that it deprives the defendants of their property and turns it over to strangers without due process of law.

"10. Because the presiding Judge, before charging the defendants' third request (which was as follows: '3d. In this case, no damages can be allowed for mental anguish or suffering or for wounded feelings, unless the proof shows

that some physical or mental injury has been caused thereby to the beneficiaries'), had already charged the jury that in estimating damages, they could take into consideration the mental anguish or suffering, or the wounded feelings of the beneficiaries by reason of the death of Mr. Brickman; the error being that his Honor failed expressly to rectify the error committed in his general charge by means of the instruction so given, and confined the jury's consideration to damage flowing from mental anguish or suffering, and from wounded feelings, whether or not there was any accompanying injury.

"11. Because the verdict was in excess of actual damages, and to that extent it was illegal; on the ground (a) that exemplary damages could not be allowed at all in this action; (b) that there was no evidence for the awarding of exemplary damages; and (c) that there was no evidence to sustain the verdict for exemplary damages which was the result of recklessness, wilfulness or malice by the defendant company, or its authorized agents, in committing any wrongful act, neglect or default charged in the complaint; and his Honor having failed to reduce the verdict to actual damages, he erred as matter of law in not setting it aside altogether.

"12. The defendants, as further grounds for the reversal of the judgment entered herein, make the following exceptions to the order of the Honorable R. C. Watts, presiding Judge, overruling the motion of the defendants for a new trial on the minutes of the Court:

"(a) His Honor erred in stating that 'the defendants by their answer admit that the plaintiff is entitled to actual damages for the death of Brickman while in their employment as a locomotive engineer;' whereas, it is submitted that there is no such admission contained in said answer.

"(b) His Honor erred in stating in said order that the motion made before him was 'only to reduce the verdict on the ground that the amount found was excessive;' whereas, the record shows that the motion was for a new trial upon

the minutes of the Court, and was entitled to be heard and disposed of upon the statutory grounds allowed. In this connection defendants' counsel admit that the only point they mentioned at the hearing of the motion was that the damages were excessive, and that the defendants were remediless elsewhere than in the Circuit Court; that plaintiff was entitled to actual damages in light of the letter of May 23d, 1904; and that allowing the motion *nisi,* a reduction accordingly would be satisfactory.

"(c) His Honor erred in stating in said order that not a single exception was noted during the trial; whereas, it is submitted that the record shows that there were proper objections reserved for exceptions, and it fails to show that defendants' counsel ever waived their right to except to the charge of the presiding Judge to the jury, or to such order as might be made on the motion for a new trial, upon any ground that was proper.

"(d) His Honor erred in stating in said order that 'during argument to reduce verdict counsel conceded that they did not have a single complaint to make as to any errors of law committed during the trial;' whereas, no such concession was made with regard to errors committed, or to the right to have them corrected by appeal, and whatever concession was made by defendants' counsel was simply for the purpose of recognizing the right of the jury, under the letter of May 23d, 1904, to award actual damages.

"(e) His Honor, in assigning reasons for his conclusion, and in stating the facts upon which he arrived at such conclusion, erred in saying that the testimony showed that the trestle in question 'was built in 1887 out of old-field pine.'

"(f) His Honor in stating his conclusion erred in saying that 'the officers and servants' of defendant, 'whose duty it was to keep the same in repair, had knowledge of the fact that' the trestle 'was not in a fit condition to be traveled over;' whereas, it is submitted that the only evidence pointing to such knowledge was objected to by defendants, and the objection was sustained.

"(g) His Honor erred in stating that 'the whole details of the wreck were extremely harrowing;' whereas, it is submitted that such details had been objected to, and they were incompetent and irrelevant evidence upon any issue raised by the pleadings.

"(h) His Honor, assuming him to be correct in his statement that 'it cannot be calculated in dollars and cents what the companionship and society of the deceased were worth to his wife and children, or what injuries they sustained from his untimely taking off,' erred in allowing such indefinite considerations to go to the jury upon which they should found their verdict, and in charging them to that effect.

"(i) His Honor committed error of law in requiring the verdict to be reduced to only $40,000, and in basing his order refusing the motion for a new trial on that condition, on the ground that exemplary or punitive damages had been awarded, upon the following statement of law: 'Under the facts as proven and under our decisions, there was a conscious failure to observe due care. It was their duty to keep the roadbed in reasonably safe repair. If they had knowledge that this trestle was not in a safe condition, and they disregarded this and failed to do their duty and repair the same, it was a wilful, wanton and high-handed disregard of the rights and safety of the public and of the train crew who had to run over this trestle, not to see that the same was put in proper repair and made reasonably safe, and for this reason the jury were justified in awarding exemplary or punitive damages;' whereas, it is submitted that the mere knowledge that the trestle was not in a safe condition could not warrant the awarding of exemplary damages, unless the failure to repair the same was attended by such carelessness and such neglect as in itself to amount to recklessness, wilfulness or malice, and to make out such recklessness, wilfulness or malice, some other fact must appear than the mere fact of non-repair."

*Messrs. B. L. Abney, Witherspoon & Spencers* and *Geo. W. S. Hart,* for appellants. *Mr. Abney* cites: *There was no relevant connection between condition of remains of deceased and injury alleged:* 51 N. Y., 107. *The agreement between counsel was not to be offered and treated as testimony:* 5 Denio, 287; 2 Wigmore on Ev., secs. 1178, 1185, 1186, 1177, 1061; L. R., 23 Q. B., 335; 3 Green. Ev., sec. 393; 15 Md., 73; Whar. Ev., 1076; 92 Ill., 142; 4 Wigmore, sec. 2594; 16 Vt., 333; 30 U. S. App., 40. *Mere knowledge of unsafe condition of track is not basis for punitive damages:* Mechem on Ag., secs. 723, 741. *Examplary damages could not be allowed in this action as in common law torts:* Code 1902, 2851-2; 32 S. C., 144; 117 Ga., 168; 70 S. C., 281; 53 S. C., 449; 24 L. R. A., 391; 177 U. S., 309; 117 Fed. R., 468; 56 S. C., 81; 49 L. J. Q. B., 585; 44 Ch. Did., 262; 53 S. C., 456; 60 S. C., 73; 129 Mich., 140; 20 Fed. Cas., 209. *If statute be construed to give jury right to assess unlimited damages as punishment, it violates both State and Federal Con.:* 53 N. H., 16; 115 U. S., 523; 198 U. S., 56.

*Mr. C. E. Spencer* and *Mr. Geo. W. S. Hart* discuss the facts mostly, and add nothing to citations, except *Mr. Spencer* cites: *No facts shown on which to base punitive damages:* 57 S. C., 270; 60 S. C., 67; 16 Ency., 392; 62 S. C., 335; 2 Suth. on Dam., 1093; 69 S. C., 444; 54 S. C., 507; 72 S. C., 355.

*Messrs. Legare & Holman* and *W. B. McCaw,* contra. *Messrs. Legare & Holman* cite: *If other witnesses have testified to same facts proof by another witness is not error:* 70 S. C., 315. *Agreement was introduced in evidence and was binding on defendants:* 55 S. C., 555. *Companionship, wounded feelings and mental anguish are injuries sustained in such cases:* 59 S. C., 87; 47 S. C., 375. *It was for jury to say if knowledge of condition of trestle was such as to warrant punitive damages:* 60 S. C., 74; 65 S. C., 97, 3; 69 S. C., 327; 68 S. C., 489.

*Mr. Wm. B. McCaw* cites: *Under allegations of wanton-ness all circumstances may be shown:* 67 S. C., 358; 54 S. C., 505; 65 S. C., 93, 430; 57 S. C., 325. *The agreement was subject to the general rule as to written instruments, and properly construed by Judge:* 17 S. C., 480; 15 S. C., 296; 3 S. C., 253; Thomp. Charg. Jur., 16, 17. *Jury may award damages in such cases for mental anguish and wounded feelings:* 59 S. C., 87; 60 S. C., 253. *The charge as to punitive damages when taken as a whole is free from error:* 68 S. C., 83; 60 S. C., 73; 54 S. C., 105, 505; 61 S. C., 189; 67 S. C., 218; 52 S. C., 344; 51 S. C., 228; 69 S. C., 164. *Lord Campbell's Act when construed to permit punitive damages does not violate 14th amendment of U. S. Con.:* 194 U. S., 910.

The opinion herein was filed April 2, 1906, but on petition for rehearing, the remittitur was held up until

May 1, 1906. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action under the statute commonly known as Lord Campbell's Act. The complaint alleges:

"That heretofore, on the 3d day of September, A. D. 1903, Henry C. Brickman was in the employment of the defendants above named as an engineer, and on said day was in charge and operating a locomotive of the defendants, drawing one of its passenger trains, operated over the line of the road known as the South Carolina and Georgia Railroad Extension Company, as aforesaid, between Camden, S. C., and Blacksburg, in the county of York, in the said State.

"That heretofore, on the 3d day of September, A. D. 1903, when the locomotive and cars, so operated as aforesaid, reached a point on the line of the defendant's road, on a trestle constructed over Fishing Creek, in the county of York, the said trestle gave way, and the locomotive so operated by the said Henry C. Brickman, together with the

coaches attached to same, were precipitated into the depth below, and in consequence thereof the said Henry C. Brickman was crushed and mangled and otherwise injured, that he then and there died from the effects thereof.

"That the said Henry C. Brickman came to his death in the manner and by the means aforesaid, caused by and through the negligent, wanton, wilful and reckless acts and conduct of the defendants, in providing, maintaining and keeping over the said Fishing Creek, on the line of its said road, an unsafe and defective trestle, in that the timbers in said trestle were old, rotten and decayed, and insufficient to support the weight of the said locomotive and cars, and in consequence thereof the same were precipitated into the said creek, thereby causing the immediate death of the said Henry C. Brickman as aforesaid."

The defendants denied the allegations of negligence and wantonness.

The jury rendered a verdict in favor of the plaintiff for $55,000.

The defendants made a motion for a new trial. Whereupon his Honor, the presiding Judge, ordered that a new trial be granted, unless the plaintiff remitted $15,000 of the verdict, which was done.

The defendants appealed upon exceptions which will be set out in the report of the case. The exceptions will be considered in regular order.

*First exception:* There are several reasons why this exception cannot be sustained. The testimony was responsive to the allegations of the complaint that Henry C. Brickman "was crushed and mangled." The action was for punitive as well as compensatory damages; therefore, the testimony was relevant for the purpose of showing the surrounding circumstances. *Pickens* v. *Ry.,* 54 S. C., 498, 32 S. E., 567; *Young* v. *Tel. Co.,* 65 S. C., 93, 43 S. E., 448; *Marsh* v. *Tel. Co.,* 65 S. C., 430, 43 S. E., 953; *Gosa* v. *Ry.,* 67 S. C., 347, 45 S. E., 810.

The only objection urged against the admissibility of the evidence was that it was irrelevant; other similar testimony was introduced without objection, and we fail to see wherein the ruling of the presiding Judge was prejudicial to the appellants. *Hyland* v. *Tel. Co.,* 70 S. C., 315, 49 S. E., 879; *Providence Machine Co.* v. *Browning,* 72 S. C., 424.

*Second exception:* This exception must be overruled on the ground that when the presiding Judge errs in stating the issues raised by the pleadings, it is incumbent on the parties to call his attention to such error, if it is to be made the basis of an appeal. *Westbury* v. *Simmons,* 57 S. C., 467, 35 S. E., 764; *Bryce* v. *Cayce,* 62 S. C., 546, 40 S. E., 948; *Thompson* v. *Ins. Co.,* 63 S. C., 290; 41 S. E., 464; *State* v. *Still,* 68 S. C., 37, 46 S. E., 564; *Turner* v. *Lyles,* 68 S. C., 399, 48 S. E., 301.

*Third exception:* The agreement to which reference was made was as follows:

"Messrs. Legare & Holman and W. B. McCaw, plaintiff's attorneys.

"Gentlemen: While we do not admit liability in the above case, under the allegations set forth in the complaint herein, nevertheless the defendants are willing that Mrs. Brickman and her children should receive actual compensation on account of the death of Henry C. Brickman, and to this end hereby consent, that a jury assess the amount of such compensation to be awarded the plaintiff herein, and upon the trial of this case you are at liberty to read this communication to the jury after each party has introduced such testimony as is competent and relevant to the issues raised by the pleadings. The case then to be argued upon the evidence as to punitive damages and amount of actual damages—that is to say, that the question of actual damages is admitted, except as to the amount thereof. The question of punitive damages is not admitted, and the

same is to be argued before the jury as to whether or not the same should be allowed.

> B. L. ABNEY,
> GEO. W. S. HART,
> C. E. SPENCER,
> Per Geo. W. S. Hart,
> "Attorneys for Defendants, Appellants."

The letter was formally introduced in evidence without objection and the presiding Judge did not undertake to construe it, until both parties had introduced their testimony. As the agreement was embodied in a written instrument, its construction was devolved upon the presiding Judge.

*Fourth exception:* The assignment of error "(a)" cannot be sustained, because the facts tended to show as a natural consequence that there was injury from mental anguish and loss of companionship. The cases of *Strother* v. *R. R.,* 47 S. C., 375, 25 S. E., 272; *Nohrden* v. *Ry.,* 59 S. C., 37 S. E., 228, and *Stuckey* v. *Ry.,* 60 S. C., 237, 38 S. E., 416, show that assignment of error "(b)" must be overruled.

*Fifth exception:* When that portion of the charge set out in the exception is considered in connection with the other part of the charge, it will be seen that assignment of error "(a)" is not well taken.

Assignment of error "(b)" cannot be sustained, for the reason that if the defendants desired a ruling in the particular mentioned, they should have presented requests to that effect.

*Sixth exception:* This exception is disposed of by what was said in considering the fifth exception.

*Seventh exception:* We can discover nothing in the charge contained in this exception indicating that the presiding Judge undertook to instruct the jury as to what facts would constitute wantonness, or that he in any respect trenched upon the province of the jury.

*Eighth exception:* Section 2851 of the Code of Laws is

as follows: "Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default is such as would if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony."

Section 2852 provides that every such action shall be brought for the benefit of the wife, husband or child, "and in every such action the jury may give such damages including exemplary damages, where such wrongful act, neglect or default was the result of recklessness, wilfulness or malice, as they may think proportional to the injury."

Our construction of the statute is that it confers the right to damages, and only leaves to the discretion of the jury the *amount* of such damages. There is nothing in the statute to take the case out of the principle announced in *Beaudrot* v. *Ry.*, 69 S. C., 160, and affirmed in *Poulnot* v. *Tel. Co.*, 69 S. C., 545, 48 S. E., 622.

*Ninth exception:* As the presiding Judge was not requested to rule, and in fact made no ruling on the question, it is not properly before the Court for consideration.

*Tenth exception:* The cases cited, in considering the fourth exception, show that the charge was too favorable to the defendants and that they, therefore, have no cause to complain.

*Eleventh exception:* We deem it unnecessary to cite authorities to sustain the proposition that this Court cannot consider an exception assigning error that the damages were excessive.

*Tweltfh exception:* The assignments of error in this ex-

ception have either been disposed of, in considering the other exceptions, or are immaterial or untenable for the reasons stated in the order granting a new trial *nisi,* which was as follows:

"A motion was made before me only to reduce the verdict, on the ground that the amount found was excessive; not a single exception was noted during the trial, and during argument to reduce verdict, counsel conceded that they did not have a single complaint to make, as to any errors of law committed during the trial.

"The testimony in the case showed that Brickman was forty years of age; that he was an engineer in good standing; that he was earning from $140 to $170 per month; that his expectancy of life was over twenty-eight years; that he was a good devoted husband and father; that he was running his engine on a passenger train on defendant's road on September 3d, 1903, when the trestle over Fishing Creek gave away from some cause and precipitated the engine and cars in the creek, quite a distance, killing Brickman and several others who were on the train as passengers and train crew, five I believe in number, and injuring some twenty persons or more. The testimony further showed that said trestle was old and in a dilapidated condition, that it was built in 1887 out of old-field pines, and had been only partially renewed from time to time, and the officers and servants whose duty it was to keep the same in repair, had knowledge of the fact that it was not in a fit condition to be traveled over, and the timbers exhibited during the trial were rotten through and through.

"Another significant fact was that the servants of the defendants burned up all the timbers of the wrecked trestle as soon as they could, and it was due to Mr. Wylie. who had a son in the wreck, that any timber was saved to be exhibited in Court.

"The whole details of the wreck were extremely harrowing. In awarding actual damages the rule has been laid down by our Supreme Court, that the jury can award such

compensatory damages as they see proper under the testimony proportionate to the injury sustained and take into consideration the earning capacity of the party injured, the loss of companionship and society of a husband and father, and any other injury sustained by them. Now the jury had before them the earning capacity of Brickman; it cannot be calculated in dollars and cents what his companionship and society were worth to his wife and children, or what injuries they sustained from his untimely taking off.

"Now, was there any wantonness on the part of the defendants? Under the fact as proven and under our decisions there was 'a conscious failure to observe due care.' It was their duty to keep the roadbed in reasonably safe repair. If they had knowledge that this trestle was not in a safe condition, and they disregarded this and failed to do their duty and repair the same, it was a wilful, wanton and high-handed disregard of the rights and safety of the public and of the train crew who had to run over this trestle not to see that the same was put in proper repair, and made reasonably safe, and for this reason the jury were justified in awarding exemplary or punitive damages.

"If this action had been that of a passenger who was killed that day, I would not reduce the verdict, for I regard it as a reckless disregard of the rights of the public, but as the deceased was consciously engaged in a hazardous business, and one that he knew that he could not reasonably expect to follow all of his expectancy or until he was an old man, and taking into consideration the expenses of living, and also taking into consideration the present value of money as compared to his future yearly earnings, I have concluded to reduce the verdict as I think it under all the circumstances of this case somewhat excessive."

Upon the settlement of the case for hearing on appeal, the presiding Judge thus explains the admissions of counsel: "As to statement made by counsel on motion for new trial *nisi,* as to having no complaint to make as to any errors of law committed by the Judge, I understand that was for the

purpose of the motion then before the Court, to wit: to reduce the verdict, and concession was made by counsel as then advised; that this statement was not intended by counsel to waive any rights they may have upon fuller investigation of record, and upon reflection later, and was not intended to waive their right to appeal from any order made, or from any ruling during the trial, or charge of the Judge."

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

PER CURIAM. After careful consideration of the petition herein, the Court is unable to discover that any material question either of law or fact has been overlooked or disregarded.

It is, therefore, ordered, that the petition (for rehearing) be dismissed, and that the order heretofore granted staying the remittitur be revoked.