## LYNCH v. NORTHERN PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit. June 24, 1895.)

### No. 174.

CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff was driving along a road, parallel with the track of defendant's railroad, in an open, prairie country, where an approaching train could be seen for a considerable distance. Upon turning a curve towards the point at which the road crossed the railroad, and being then about 36 feet from the track, traveling at a moderate trot, plaintiff discovered a freight train approaching at the rate of about 8 miles an hour from the same direction in which he had been traveling. He stopped his team close to a side track, 8 feet from that on which the train was running. Plaintiff testified that, as soon as he turned the curve, he looked for a train; that his horses were very gentle, were used to the railroad, and had frequently stood with their noses nearer a train than they were when he stopped; but that they were frightened by escaping steam, and dashed in front of the engine, which struck and injured plaintiff. Held, that it was error to instruct the jury that, if plaintiff had looked or listened for the train, he could have seen or heard it when he was anywhere within 200 feet of the crossing, and that he neither looked nor listened within a reasonable distance, and he was therefore guilty of contributory negligence, and could not recover; but that the question of plaintiff's contributory negligence should have been left to the jury.

In Error to the Circuit Court of the United States for the District of Montana.

This was an action by Neptune Lynch, Sr., against the Northern Pacific Railroad Company for personal injuries. Judgment was rendered for the defendant in the circuit court. Plaintiff brings error. Reversed.

McConnell, Clayberg & Gunn, for plaintiff in error.

Cullen & Toole and Jos. D. Redding, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and BELLINGER, District Judge.

BELLINGER, District Judge. This is an action for damages for injuries at a crossing of the defendant company's track in Montana. The plaintiff lived near the place of the accident. He had been "down the road" to a blacksmith's shop, and had crossed the track at a public road crossing in doing so. As he returned, he traveled along the public road, parallel to the railroad track, towards the town

of Horse Plains in a trot, going at the rate of 5 or 6 miles an hour. He had reached a point where the wagon road curves towards the railroad track to cross it, when he saw a freight train approaching upon the main track of the railroad. There was a side track on the side from which plaintiff was approaching, and distant 8 feet from the main track. Upon seeing the train, the plaintiff "pulled up" his horses. He was at this time 36 feet from the main track. He succeeded in getting the team stopped close by the side track, but the horses, frightened by the noise made by the escape of steam from the locomotive, dashed forward upon the track, and the wagon was struck by the engine, from which the injuries complained of resulted. The engine whistled at the whistling-post, which is distant 3,945 feet from the crossing where the accident occurred. There is conflict in the testimony as to whether the engine bell was rung. The country in the vicinity is a level, prairie country, and a train could have been seen by the plaintiff at any time when within 200 feet of the crossing for a distance of a mile. The train approached the crossing from the same direction traveled by plaintiff, so that it was in his rear until he turned at the curve to go upon the crossing. The speed of the train, according to the testimony of the conductor, was at the rate of about 8 miles per hour. The engine ran about 300 feet beyond the crossing where the accident occurred before it stopped. There was an irrigating ditch between the track and the public road, which was crossed by a culvert, distant from the crossing some 160 or 170 feet. This culvert made an elevation in the road at that point. The plaintiff testified as follows:

"When I got off the little culvert there, close by under the wagon road, it was descending down hill, then they (the horses) trotted right along up until I came to the curve where I saw the locomotive. As soon as I made the turn I looked to see whether the road was clear."

The crossing in question is at Horse Plains, a village having a population of about 100 persons. The plaintiff resided then within a short distance of the place of the accident. He had lived there many years. The team he was driving was a "very gentle" one. As to this he testifies as follows:

"The team I was driving was a very gentle team. I had known them a long time. They had been used right around the railroad. They were so gentle that a Chinaman I had working for me could drive them any place. We generally had to drive them up here to load in the wagon, and my horses have frequently stood, when the train went by, with their noses nearer the train than where I stopped them the day of the accident."

At the conclusion of the testimony on the trial, defendant's attorneys requested the court to instruct the jury to return a verdict for the defendant, "for the reason that it appeared from the undisputed testimony that the plaintiff, if he had looked for the train at any time when he was within 200 feet of the crossing, could have seen it approaching at a distance of more than a mile, and if he had listened he could have heard it approaching within such distance; that the plaintiff neither looked nor listened for the approach of said train within any reasonable distance from the crossing; and that he did not see the train until it was within 75 feet of the point where

the accident occurred." The court gave the instruction as re-- quested, and there was accordingly a verdict for the defendant.

The instruction was erroneous. Every inference favorable to the plaintiff that can fairly be drawn from the testimony must be con- ceded to him in deciding the question presented in the case; and upon the testimony in the case the court cannot say, as a matter of law, that the plaintiff was negligent. If the plaintiff had failed to look or listen for an approaching train before driving upon the track, he would have omitted an unmistakable duty, and would not be entitled to recover. In such case there is no room for an infer- ence of reasonable care. The omission makes a plain case of negli- gence. The experience and observation of all men are matters of which courts take notice, and these agree in pronouncing such an omission a negligent one. No circumstance connected with it can alter this estimate of it, or reconcile it with prudence. There is, therefore, in such a case nothing for the jury to consider.

In this case, the plaintiff did look to see if a train was approach- ing. He was then 36 feet from the track, at the point where the public road turned to cross it. It may be inferred that he was neg- ligent in not looking sooner, but there is no such conclusion of law. The law enjoins a duty, but the conditions under which that duty may be performed are not capable of exact definition. They neces- sarily depend upon the circumstances of the particular case. The plaintiff lived in the immediate vicinity of the place of the accident. The horses driven by him were very gentle. They were not only accustomed to cars, but to cars at that station. They had fre- quently stood, when the train went by, with their noses nearer the train than where the plaintiff stopped them at the time of the acci- dent. These facts bear upon the plaintiff's conduct in determining how near to the track he might prudently drive his horses before stopping them, and must be considered in deciding whether or not he was in fact acting with reasonable prudence.

The testimony tends to show that the horses became frightened and unmanageable in consequence of the escape of steam from the locomotive as it approached the crossing. To what extent this con- tributed to the accident, and how far such a danger might have been foreseen and guarded against, in the exercise of reasonable care, are matters to be considered with reference to the plaintiff's alleged negligence. These circumstances are more or less complicated, and render the question of ordinary care, depending upon them, pecul- iarly a question of fact for a jury. "In cases of this sort, where the facts, though admitted, are debatable, and necessarily create doubt and hesitation, it is safer for the interest of the parties, and more consistent with the ground upon which the right of trial by jury rests, to submit them to the jury to resolve such doubts, than the court to dispose of them upon its own responsibility." Walsh v. Navigation Co., 10 Or. 261.

The question presented in this case is, whether the plaintiff looked and listened within a reasonable distance from the crossing. What, then, is such reasonable distance? Manifestly, this is to be inferred as a fact from the circumstances of the case. It is not a matter

of legal judgment, but one of general observation and practical experience. It may be said, without doubt, that it would have been more prudent in the plaintiff to have looked when he was much further from the crossing than he was at the time he did look, but it is not a question of greatest or relative care. It is a question of reasonable care. The facts give to the argument in favor of the contention that plaintiff was negligent much force, but it is argument after all. The question is a debatable one. The opinions of men will not at once agree concerning it. It is fairly open to doubt, to say the least, whether the plaintiff might not reasonably conclude that his team of gentle horses might be safely stopped at any distance from the track greater than that at which they had frequently stood while trains were passing, and in all such cases, as we have seen, the question of contributory negligence is for the jury.

The judgment of the lower court is reversed, and a new trial ordered.