FT. WORTH & D. C. RY. CO. v. ALCORN.
(No. 804.)

(Court of Civil Appeals of Texas. Amarillo. June 5, 1915.)

1. APPEAL AND ERROR ☞999—REVIEW—SUFFICIENCY OF EVIDENCE.

In reviewing a verdict for plaintiff for negligence, all evidence tending to show he was guilty of contributory negligence must be given the construction most favorable to him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. ☞999.]

2. RAILROADS ☞350—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Evidence, in an action for collision at a crossing, with an automobile, of a freight train, quietly backed from the direction in which the sun was shining, held to make the question of contributory negligence one for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ☞350.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

178 S.W.—53

**3. RAILROADS** ☞350—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—STOPPING VEHICLE.

The driver of a vehicle is not as matter of law guilty of contributory negligence for not stopping, as well as looking and listening, before going on an ordinary railroad crossing, but it is a question of fact for the jury under the circumstances of each case.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ☞350.]

**4. TRIAL** ☞194—INSTRUCTIONS—WEIGHT OF TESTIMONY.

A requested instruction to find for defendant if the jury believe and find from the evidence that plaintiff, when he ran his automobile on the railroad crossing, knew he could not see the cars because the sun was shining in his eyes, and further find and believe that an ordinarily prudent person would have stopped the machine to ascertain whether any cars were being backed into the crossing, is not on the weight of the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. ☞194.]

**5. TRIAL** ☞244 — INSTRUCTIONS — ISOLATION OF FACTS.

Nor is such requested instruction an isolation of facts disconnected with other facts sufficient to condemn it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. ☞244.]

**6. TRIAL** ☞260—RIGHT TO SPECIAL INSTRUCTIONS—SUPPLYING LAW TO FACTS.

Such requested instruction is a presentation of a substantive defense within the rule that a requested instruction applying the law to specific facts relied on should be given, though the principle of law, generally stated, had been embraced in the general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

**7. RAILROADS** ☞351—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

The requested instruction, to find for defendant, if the jury believe and find from the evidence that plaintiff, when he ran his automobile on the railroad crossing, knew he could not see the cars because the sun was shining in his eyes, and further find and believe that an ordinarily prudent person would have stopped the machine to ascertain whether any cars were backing into the crossing, is sufficient without the addition of the words, "and would have ascertained that defendant was backing cars to said crossing in time to have avoided the injury"; it following, from the fact of collision as soon as he got on the crossing, that if he had stopped any appreciable time the danger would have been apprehended and avoided.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. ☞351.]

**8. TRIAL** ☞274—INSTRUCTIONS—WAIVER OF OBJECTIONS — GENERAL CHARGE AND REQUESTS.

Under Rev. St. 1911, arts. 1971, 1973, 2061, as amended by Acts 33d Leg. c. 59, the first requiring objections to the general charge to be made before it is read, otherwise to be considered waived, the second authorizing either party to present, within a reasonable time after the general charge is given to the parties for examination, instructions desired, and the third, providing that the refusal of the instructions shall be regarded as approved unless excepted to, refusal of a special instruction, supplying something wanting in the general charge, and specifically and properly presenting the question, and properly excepted to, is not waived by failure in any other way to object to the general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 687; Dec. Dig. ☞274.]

**9. RAILROADS** ☞312—CROSSINGS—BELL AND WHISTLE.

Where a train approaching a crossing started within 80 rods of it, the statute does not require the blowing of the whistle, though it may require the ringing of the bell.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 988–1001, 1003–1005; Dec. Dig. ☞312.]

**10. EVIDENCE** ☞123 — RES GESTÆ — STATEMENTS AFTER ACCIDENT.

Statement of a railroad employé to the occupants of an automobile immediately after its wreck by a train, "What in the hell are you doing here, anyhow," is not part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. ☞123.]

**11. APPEAL AND ERROR** ☞1050 — PREJUDICIAL ERROR—ADMISSION OF STATEMENT.

Admission in evidence of such statement, in an action for the wreck, is prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

Appeal from Clay County Court; W. T. Allen, Judge.

Action by J. F. Alcorn against the Ft. Worth '& Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Thompson & Barwise, of Ft. Worth, and Arnold & Taylor, of Henrietta, for appellant. Wantland & Parrish and P. M. Stine, all of Henrietta, for appellee.

HENDRICKS, J. [1] The appellee, Alcorn, sued the appellant, the Ft. Worth & Denver City Railway Company, for the value of an automobile alleged to have been destroyed by the railway company, at a public crossing in the town of Wichita Falls. The jury found in favor of the plaintiff, and the appellant challenges the verdict of the jury and the judgment of the court, on the ground that the evidence is insufficient in that the undisputed testimony discloses that J. F. Alcorn, Jr., the person driving the automobile at the time of the collision, was guilty of contributory negligence.

"In order to test that question, we must give to all evidence, which would tend to show that he was guilty of negligence, the construction most favorable to him, and determine the question by the construction of the testimony most favorable to him in support of the finding of the jury." Mitchum v. Chicago, Rock Island & Gulf Ry. Co. (Sup.) 173 S. W. 879. "Or, as it is otherwise stated in some of the cases, the facts must be of such nature that a jury could not find a verdict in favor of him." Id.

[2] The testimony of Alcorn, Jr., discloses that, in approaching the crossing within a distance of 300 or 400 feet from the same, he was running the auto about eight or ten miles per hour. As the auto approached nearer to the crossing, he diminished the

speed of the same, and was driving the car as slowly as he could run the same in "high"; that the engine at that speed made very little noise, and before he drove up to the crossing he listened, and looked both ways from the crossing along the track; that he did not hear the noise of the train nor the sound of a whistle or bell. The train, consisting of from seven to eight box cars, with an engine, was being backed in the direction from the sun, which was shining in Alcorn's face. He testified that he was driving the car with his foot on the brake, customary with him at all times, and when he first saw the train the nearest car was very close, and he immediately used the emergency and foot broke and reversed the engine of the auto, stopping the same. A woman, who saw the collision while sitting in the front door of her home at a distance of about 100 feet, testified that the train of seven or eight cars was pushed by an engine, backing up, and was running very quietly; and that no bell was rung nor whistle sounded, but some one "yelled" as the train struck the auto; that the automobile as it passed her house and on to the track was moving slowly. She said: "They were facing the sun; the sun was shining brightly." This same witness did say there was nothing to prevent the parties in the automobile, as they went upon the crossing, from seeing the train of cars which struck the auto; however, both parties in the auto testified that as they immediately approached the crossing, in looking for a train in the direction the sun was shining towards them, they did not see any cars and could not see any on account of the bright light of the sun—the collision occurring between 4 and 5 o'clock of an October afternoon. Jackson, Alcorn's companion, sitting in the same seat, said:

"As we came in sight of the railroad track, I was looking up and down the track, just the very best I could. It was late in the evening, the sun was low. There was an icehouse just across the railroad track. It was a red building, and in running up to the track, with the sun right in our eyes, and hearing no bell or whistle on that train, we did not see it. * * * I did not hear a sound of a train until just as we saw the train, which was but a few feet from us, and then nothing more than the rumble of the train."

Alcorn testified that the sun was all that prevented him from seeing the train, and, had he seen the cars backing up the first time he looked up and down the track, he could have stopped the automobile and avoided the accident; and that when he saw that the sun was obscuring his view, though he did not stop, he "slowed down." He also said that he was familiar with the tracks at the crossing at the time of the injury.

We are unable to say, upon the authorities, and in view of their logical tendency, in this state, that the above testimony presents an undisputed question of contributory negligence. These two witnesses are positive that the brightness and glare of the afternoon sun effectively prevented a view of the track, and that they neither heard nor saw the train; that no warning of approach was given. Of course, the degree of caution to be exercised by the plaintiff should be proportioned to the degree of danger he should have anticipated. We are unable, though, to affirm from the record the distance from this crossing at which a traveler by looking could have seen the particular train of cars outside the zone of the sun's glare. We know of no authority that would impute negligence as a matter of law as to the selection of a place to look for trains at crossings; though we presume, of course, that it should be at the point where an ordinarily prudent person should observe. In Lynch v. Northern Pacific R. Co., 69 Fed. 86, 16 C. C. A. 151, affirmed without opinion, by the Supreme Court of the United States, 173 U. S. 701, 19 Sup. Ct. 878, 43 L. Ed. 1185, where plaintiff looked when 36 feet from the track, it was held to be for the jury to say if he was negligent in not looking sooner; there being a good view at any point within 200 feet of the track.

[3] The rule that a driver of a vehicle, or one approaching a crossing, must stop, and then listen and look before crossing, when approaching a railroad at an ordinary crossing, has not been adopted in this state. Michalke v. Railway Co. (Civ. App.) 27 S. W. 165; Houston & Texas Central Ry. Co. v. Wilson, 60 Tex. 144; I. & G. N. Ry. Co. v. Neff, 87 Tex. 308, 28 S. W. 283.

"* * * Our statute does not require of those approaching a public road crossing to stop and look, and listen for passing trains, before attempting to make the crossing. Then whether a failure to do so would or not constitute negligence is a question of fact, and to be determined by the jury from the facts and circumstances of each particular case." Railway Co. v. Wilson, supra.

Justice Stayton, in the case of I. & G. N. v. Graves, 59 Tex. 332, after announcing the general rule of contributory negligence, by a person approaching a crossing precluding recovery, further said:

"A person, however, in approaching a railway crossing, has the right to expect that a railway company will give such signals of an approaching train as prudence and the law require, and if, relying upon this, he attempts to cross the track without knowledge or means of knowledge of the approach of the train, * * * then he is entitled to recover."

Of course, the greater the danger, the greater the diligence; and, if the danger is known (distinguished from a general situation of possible danger), the diligence is still more rigid. The expectation of the railway manifesting signals as a warning to prevent accidents, operating upon the mind of one approaching railway crossings, if the person looks and listens, though obstructions may intervene, is given more weight in this state than in others, upon the theory, we presume, that the individual, as well as the

railroad, measured by the duties and necessities of each, has a right to the crossing. Appellant says: "He (meaning the auto driver) could have prevented the accident by stopping." That of course, may be true, however, to prescribe in the light of subsequent conditions what a man could have done, does not necessarily impute negligence. If you proved contributory negligence by "hindsight," it would generally afford a wholesale immunity to tort-feasors.

"The fact that, if the automobile had been stopped, the occupants might have heard the approaching train, and thus have avoided the accident, is not decisive of their negligence. Fairminded men might honestly differ, under all the facts as disclosed by the evidence, whether the exercise of such precaution was exacted of them." Pendroy v. Railway Co., 17 N. D. 433, 117 N. W. 534.

Appellant urges that the case of Heaney v. Railway Company, 112 N. Y. 122, 19 N. E. 422, holding that it is negligence per se to attempt to cross tracks hidden by the smoke from a passing train, without waiting for a clear view, is analogous and in point. In the case of McNamara v. Ry. Co., 64 Hun, 637, 19 N. Y. Supp. 497, one of the Supreme Courts of New York attempted to follow the Heaney Case upon a similar state of facts and barred the plaintiff; but the court of Appeals (136 N. Y. 650, 32 N. E. 765) practically emasculated the Heaney Case as an authority upon appellant's theory, by distinguishing, and reversed the intermediate appellate court, affirming the trial court's judgment. The case of Brommer v. Penna. R. R. Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, by a federal Circuit Court, as to the care required of an automobile driver stopping at a railroad crossing, is rather in point upon appellant's theory, but which we refuse to follow, believing that the doctrine is opposed to our local law.

[4-6] However, we think that appellant's third assignment of error, addressed to the court's action in refusing special charge No. 5, practically embodying appellant's theory as a jury question, is well taken, unless the condition of the record, under the acts of the Thirty-Third Legislature, in regard to instructions to a jury, preclude our consideration of the error. The court charged generally:

"If you find that J. F. Alcorn, Jr., was guilty of negligence in going upon defendant's tracks at said crossing, without discovering that said train was approaching said crossing, and that such negligence, if any, contributed to the injury," to return a verdict for the defendant, though the jury may find the defendant guilty of negligence.

There was no written objection specifically addressed to the court's charge on this question as to any omission of appellant's theory of contributory negligence, based upon any particular phase of the testimony; but the following special charge was requested, refused, and properly excepted to under the statute:

"Gentlemen of the jury, you are charged that if you find and believe from the evidence in this case that J. F. Alcorn, Jr., at the time he ran the automobile in question on the track of the defendant company, knew that he could not see the cars being propelled on the track of defendant because the sun was shining in his eyes, and you further find and believe that an ordinarily prudent person would have stopped said auto to ascertain whether there were any cars being backed into said crossing, then you will find for the defendant."

We do not think this charge is upon the weight of the testimony, nor an isolation of facts disconnected from other facts sufficient to condemn it, but that it is a presentation of a substantive defense coming sufficiently within the purview of the following cases: Yellow Pine Oil Co. v. Noble, 101 Tex. 125, 105 S. W. 318. This court has, upon repeated occasions (which cases we will not cite here), called attention to the extension of the doctrine by the Supreme Court of the state where a requested instruction applying the law to specific facts (in that case) on the issue as to whether an employé, killed by the escape of poisonous gases while on top of an oil tank, was engaged at the time in discharging the duties for which he was employed, was held improperly refused though the principle of law, generally stated, had been embraced in the general charge. On the question of substantive defenses, we cite the cases: M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; Railway Co. v. Hall, 98 Tex. 480, 85 S. W. 786; M., K. & T. Ry. Co. v. Wall, 102 Tex. 362, 116 S. W. 1140; Ft. Worth & Denver City v. Taylor (Civ. App.) 153 S. W. 358; and the same case (Civ. App.) 162 S. W. 971, 972, and cases cited.

[7] It may be that the following language, "and would have ascertained that the defendant was backing cars to said crossing, in time to have avoided the injury," would have been technically, in its appropriate position, a proper addition to the special charge; but the act of Alcorn, driving upon the track, coupled with the collision, are such in this record that it follows, if he had stopped his auto any appreciable length of time whatever, the danger would have been apprehended and avoided. We do not believe that the charge should be rejected on that ground.

[8] The most serious position against the charge is the opinion of the Court of Civil Appeals of the San Antonio court, in the case of Steele & Co. v. Dover, 170 S. W. 812, 813. We are inclined to agree with appellee that by the logic of that opinion, construing the acts of the Thirty-Third Legislature, p. 113, if no objection is made to the general charge of the court, though a special requested instruction is refused and excepted to, embodying an element omitted by the general charge, the trial court does not have to give the requested charge. We disagree, however, with that holding, and think that a more reasonable construction of the statute, viewed as a whole, is that if a litigant makes a presentation in a special charge of an ele-

ment of recovery, or of defense, appropriately based upon the facts and not embodied in the main charge, and sufficiently succinctly calls the court's attention to the omission, he is entitled to the submission of the charge, though he failed to object to the general charge on account of such omission. Of course, under article 1971, the general charge shall be objected to before the court reads the same to the jury, and all objections not so made are considered waived; but article 1973 also prescribes that either party may present to the judge such instructions as he desires, provided that the same "shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination."

Article 2061 prescribes that if the instructions are refused they shall be regarded as approved unless excepted to. If excepted to, by the legal effect of article 2061, the litigant does not waive, but challenges the action of the court in refusing the charge, unless it may be that the failure to object to the general charge accomplishes that end. The purpose and spirit of this statute is to opportunely permit the trial judge to correct his errors, and if that purpose is accomplished we do not think an unnecessary burden should be placed upon litigants. If an objection by one article of the statute, on account of not having been made, is waived, but if, in reality, in another form, as applied to a substantive defense, it is presented in a special charge, and by another article of the statute the special charge and the refusal of the court when excepted to, are not waived, why should the former article nullify the latter? The trial judge knows what he has written in the main charge, and the special charge is presented to him before he has delivered his main charge to the jury, and embodies the same defect and attempts the same correction of the main charge the objection would have pointed out; there is no real necessity of a "double-barrel" presentation of the same question to the trial court, if the special charge specifically and properly presents it. When this condition prevails, we think the spirit and meaning of the statute are subserved, though the general charge was not excepted to; and think the trial court in this instance erred in refusing to give the charge.

[9] The Supreme Court, in the case of Railway Co. v. O'Neal, 91 Tex. 671, 47 S. W. 95, held that, where the starting point to the approach to the crossing was less than 80 rods, the statute did not require the whistle to be blown. The charge on this question under the prescriptions of the statute—at least in the present condition of this record—with reference to the blowing of the whistle, is incorrect. What evidence there is upon the point starts this train within less than 80 rods. The objections of appellant are not really sufficient to challenge the charge in this respect, but we call attention to it in view of another trial. Chief Justice Fisher, in the case of Gulf, Colorado & Santa Fé Ry. Co. v. Hall, 34 Tex. Civ. App. 535, 80 S. W. 135, held that a different rule obtains with reference to the ringing of the bell. This particular question we have not exhausted, but for the benefit of the trial court advert to the same for the same purpose.

[10, 11] The court permitted A. Z. Jackson, Alcorn's companion in the auto, to testify that one of the employés of the defendant company said to them immediately after the wreck, "What in the hell are you doing here, anyhow?" We do not think that the expression was res gestæ of any explanatory condition, or elucidates any issue in the case. It is prejudicial and should have been rejected. S. A. & A. P. Ry. Co. v. Belt, 46 S. W. 374.

The judgment is reversed, and the cause remanded for another trial.