NORTHERN PAC. R. CO. v. FREEMAN et al.

(Circuit Court of Appeals, Ninth Circuit.    November 1, 1897.)

No. 365.

1. RAILROADS—DEATH AT CROSSING—CONTRIBUTORY NEGLIGENCE.
    The mere fact that one approaching a railroad crossing in a wagon was not seen by the witnesses of the accident to stop or turn his head to look and listen is not conclusive of contributory negligence, so as to require withdrawal of the case from the jury, where there were indications from the track of his wagon that he may have seen the train as soon as it was possible to do so from the conformation of the ground, and that he attempted to get out of its way; there being also evidence tending to show that no signal was given by the approaching train.

2. DEATH BY NEGLIGENCE—DAMAGES—INSTRUCTIONS.
    The court charged that, in fixing the damages, the jury might take into consideration deceased's ability to earn money, to support, maintain, care for, and protect his wife and children, and to educate and train the latter, "and the loss to the wife and children because of being deprived of the use and comfort of his society, and the loss of his experience, knowledge, and judgment in managing his and their affairs," etc.  *Held*, that this was not calculated to mislead the jury into the belief that they might give damages for a loss of society in the sentimental sense, it being clear that the court intended a loss of society in the material and pecuniary sense.

    Ross, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This was an action at law by Serette O. Freeman and others, being the widow and three minor children of T. A. Freeman, against the Northern Pacific Railroad Company, to recover damages on account of his death.    In the circuit court there was a verdict and judgment for plaintiffs, and the defendant sued out this writ of error.

Crowley & Grosscup, for plaintiff in error.
J. B. Bridges, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge.    The widow and the three minor children of T. A. Freeman, brought an action against the Northern Pacific Railroad Company to recover damages on account of his death.    The decedent, just prior to the accident which caused his death, was in his wagon, driving a team at a slow trot along the county road towards a railroad crossing.    He was a man of 30 years of age; his eyesight and hearing were good; and he was familiar with the crossing, having frequently driven the same team over it.    The team was gentle, and was accustomed to the cars.    The wagon road crossed the railroad track nearly at right angles.    The track at this point was in an excavation 8 feet below the elevation of the surrounding country, and the wagon road approached it by a gradual incline, the length of which was from 130 to 150 feet.    Along the greater portion of this distance the view of any train approaching, either from the north or the south, was shut off by the banks of the cut on either side of the wagon road; but, at a distance of about 40 feet before reaching the

track, the road emerged from the cut, and the view up the track for 286 feet was unobstructed.

It is contended by the plaintiff in error that the trial court should have instructed the jury to return a verdict for the defendant, for the reason that the undisputed testimony shows that the deceased, as he approached the railroad crossing, did not look up the track, and did not stop and listen, and did not see the train which was approaching in full view, and that, therefore, his contributory negligence is proven to be such as to preclude his representatives from recovering damages. A careful consideration of the evidence does not convince us that the court erred in declining to give this instruction. There were witnesses who testified, it is true, that the deceased drove his team along the road at a gentle trot, and that he turned his head neither to the right nor to the left, and did not stop his team until the train was upon him; but there is evidence, on the other hand, that, at about the first point where the decedent could have seen the train after emerging from the cut, the tracks of his wagon left the beaten road, and swerved to the right, and that the horses crossed the railroad track several feet away from the usual crossing. According to the record, there were but three witnesses who saw the accident,—two women and a girl of 10 years of age. The women were upon the wagon road, and were approaching the railroad track from the side opposite that from which the decedent was coming. At the time when the latter was struck by the train, they were from 200 to 250 feet away. They testified that he was approaching at a slow trot, not faster than a brisk walk, and that his speed was uniform up to the time of the accident; that he looked straight before him, without turning his head towards the approaching train; and that his team did not swerve from the direct course in which it was going. The other witness was standing by the side of the road, upon the opposite side of the track. She was near the point where the descent of the wagon road into the cut began, and was consequently from 130 to 150 feet from the railroad track. She testified that the decedent passed her going at a slow trot, and that she saw him drive all the way down the hill; that the team "went down a ways, and then run and flew back." She testified, further, that the horses slowed up,—pulled up, —and that, just when he went down, the train was close to him, "and he saw the train, I guess, and he just tried to get out of the way"; that the horses tried to get out of the way of the train. In answer to the question, "Do you know whether he was looking either way?" the witness replied, "No, sir." It is manifestly impossible, in the nature of things, that any of these witnesses could testify of her own knowledge that the decedent did not look towards the approaching train, or that he did not see it as soon as he emerged from the banks, and reached a point where it was visible. It does not follow that he did not look and listen from the fact that he was not seen to turn his head towards the approaching train. The wagon road was sandy, and the wagon made but little noise. The decedent had the right to believe that any train coming towards the crossing would give the usual signal. There was evidence which went before the jury tend-

ing to prove that no signal was given. The majority of the witnesses who testified in the case were at the time of the accident so situated that, if the train had whistled for the crossing, they would have heard it They all, excepting the conductor, the engineer, and the fireman of the train, testified that they did not hear the whistle, and one testified that the whistle was not blown. When all this testimony is borne in mind, it cannot be said that the jury should not have been permitted to decide whether there was contributory negligence on the part of the decedent. Improvement Co. v. Stead, 95 U. S. 161; Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044; Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653; Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Lynch v. Railroad Co., 16 C. C. A. 151, 69 Fed. 86.

It is urged that the court erred in instructing the jury in regard to the elements of the plaintiffs' damage, in that it permitted the jury to consider the loss to the wife and children because of being deprived of the use and comforts of the decedent's society. When the whole of the charge upon this subject is considered, it will appear that it was not the intention of the court to instruct the jury to measure by their verdict the loss of decedent's society in a sentimental sense, or to include a solatium for injury to the feelings of the widow or children, but only the loss of his society in a material and pecuniary sense. The whole of the charge is as follows:

"If you find, under the evidence and instructions of the court, that the plaintiffs are entitled to recover damages against the defendants, then, in arriving at the amount of such damages, you should take into consideration the age of the deceased at the time he was killed, his probable duration of life had such accident not occurred, his mental and physical condition, his ability to earn money and to support and maintain his wife and children, his ability to care for and protect his wife and children, and to educate and train the latter, and the loss to the wife and children because of being deprived of the use and comforts of his society, and the loss of his experience, knowledge, and judgment in managing his and their affairs, and any and all other things which may have appeared in the testimony enlightening you upon the subject."

The portion of the charge which is complained of is here so connected with the remainder of the instruction as to make it sufficiently clear to the jury that the loss of the use and the comforts of the decedent's society, which they were allowed to consider, was the material use and comfort which were akin to the other elements of damage contained in the charge, and which it is admitted that the law sanctions,—the loss of experience, knowledge, judgment, etc.

In the case of Railroad Co. v. Goodman, 62 Pa. St. 329, the jury were instructed that damages should be given as "a pecuniary compensation, the jury measuring the plaintiff's loss by a just estimate of the services and companionship of the wife, of which he was deprived by the accident." Upon this, the court says:

"Looking at the entire charge upon the subject of damages, we think it clearly confined to damages to a pecuniary compensation. * * * Companionship was used to express the relation of the deceased in the character of the services she performed. He merely meant to say that the loss should be measured by the value of her services as a wife or companion."

Of similar purport is the case of Cregin v. Railroad Co., 19 Hun, 343. We find no error for which the judgment of the circuit court

should be reversed. It is accordingly affirmed, with costs to the defendants in error.

ROSS, Circuit Judge, dissenting.