14644

MISHOE v. ATLANTIC COAST LINE R. CO. *ET AL.*

(197 S. E., 97)

404

November, 1935.

*Mr. F. L. Willcox,* for appellants,

*Messrs. A. C. Hinds* and *J. D. E. Meyer,* for respondent,

March 16, 1938.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON.

Appeal from judgment entered for plaintiff in an action for wrongful death, instituted for the benefit of the widow and son of his intestate, Thomas Hugh Pollard.

Deceased met his death at Heineman, this State, while traveling north from Charleston at night upon U. S. Highway No. 17 in a truck owned by him and loaded with vegetables, but operated by one of his employees, as the latter attempted to cross, at grade, the tracks of appellant, Atlantic

Coast Line Railroad Company, at a point where the highway and railroad intersect at right angles—when his truck and a passenger train were in collision. The train was derailed, the truck was demolished, and the deceased was instantly killed.

The amended complaint alleges, in substance, that the death of Pollard was caused by the joint and concurrent negligence, carelessness, recklessness, willfulness, and wantonness of defendants, their agents and employees, in permitting said locomotive and train to approach and go upon said crossing at a rapid, excessive, and dangerous rate of speed, although the engineer was fully acquainted with all of the existing hazardous conditions at such crossing, created by the acts, defaults, and omissions of defendants; in permitting the train involved to approach and go upon said crossing at such speed, and without reducing the same, or giving the statutory signals, or any other signal or warning that it was approaching; in unnecessarily, and for an unreasonable time, keeping and maintaining a string of box cars on a spur track in close proximity to the highway, which, combining with structures and trees on the south of the railroad, and west of the highway, obstructed the view of, and prevented the operators of northbound motor vehicles from seeing or observing, the approach of eastbound trains.

Defendants denied all allegations of negligence, recklessness, willfulness, and wantonness, and affirmatively alleged that respondent's intestate, by the exercise of reasonable care, or by the exercise of slightest care, could have seen and heard the approaching train, yet he negligently, and with gross carelessness, gross recklessness, and gross willfulness, failed and neglected to take the slightest care for his protection, and permitted the truck to be driven into the front of an approaching train, which could have been seen and heard in ample time to have brought the truck to a stop by the exercise of the slightest care. The pleas of contributory negligence, contributory gross negligence, willfulness, and reck-

lessness of the intestate, and of the driver of the truck, were also affirmatively interposed as being in bar of the action.

At the close of the case, a motion for directed verdict for the defendant, Bruner, roadmaster, having been granted for lack of evidence implicating him in any manner with the unfortunate death of Pollard, counsel for the railroad company and Cabell, engineer of the ill-fated train, moved for a directed verdict in their favor upon the ground that "the only reasonable inference, the only inference, that could possibly be drawn by a reasonable man from all of the testimony, is that the plaintiff's intestate was as negligent, such negligence contributing as a proximate cause to his injury; was as wanton, if that is possible, such wantonness contributing as a proximate cause of his injury, and was as grossly negligent, such gross negligence contributing as a proximate cause of his injury, as either of the defendants; and that there is no reasonable inference that can be drawn from all of the testimony but that plaintiff's intestate, and the party in whose charge he had placed his automobile and himself, were grossly negligent, and that such gross negligence contributed to the injury as a proximate cause thereof."

This motion being refused, the trial Judge submitted the cause to the jury as to actual damages only, whereupon a verdict in the sum of $40,000.00 was returned against appellants.

Upon motion for new trial upon grounds not fully disclosed by the record before this Court, the Court below "reached the conclusion that all the grounds for the new trial, advanced by the attorneys for the defendants, except the excessiveness of the verdict, should be overruled," but a new trial *nisi* was ordered unless the respondent should, within ten days, remit the sum of $16,000.00. Such was done, and judgment duly entered for plaintiff for $24,000.00.

In this Court, by four exceptions, error is assigned to the trial Judge (a) in refusing to grant their motion for a directed verdict upon the grounds on which it was predicated,

and which we have quoted above (first and second exceptions); and (b) in refusing a new trial absolute because:

"3. * * * in view of the testimony as to the extent of the injuries sustained by the beneficiaries, and in view of the charge of the presiding Judge as to the elements to be considered in assessing damages, the amount of the verdict disclosed such prejudice against the defendants, or· sympathy or partiality for the beneficiaries as to indicate that the verdict was in no sense the result of the exercise of the sound judgment of the jury, but was the result of such caprice, prejudice, passion or partiality as to demonstrate that defendants had failed to receive the consideration to which any litigant is entitled at the hands of a jury."

"4. * * * the amount found by the jury, and even the amount which plaintiff agreed to accept in order to avoid a new trial, was a grossly excessive amount to be allowed for all injuries which could have been found from the testimony to have been sustained by the beneficiaries on account of the death of plaintiff's intestate, and, therefore, that there was no sound basis for permitting a final judgment in such grossly excessive amount."

As to Exceptions 1 and 2, it will be observed that no issue is made here as to the negligence of appellants—in fact, such is admitted by the very nature of the exceptions, the only question raised thereby being, substantially: Can any other reasonable inference be drawn from all of the evidence than that the intestate, and/or his employee, in whose charge he had placed his person, were guilty of such negligence, and such gross negligence, without which the death of the former would not have occurred, notwithstanding the admitted negligence of appellants?

It is elementary that the pleas of contributory negligence and gross contributory negligence presuppose actionable negligence upon the part of defendants; "that contributory negligence by plaintiff can never exist except when the injury has resulted from the negligence of the

defendant as a 'concurring proximate cause'" (*Wilson v. Sou. Ry. Co.*, 73 S. C., 481, 53 S. E., 968, 975, and authorities therein cited); and that the burden of establishing these affirmative defenses, by the preponderance of the evidence, rests upon defendants. And, in ruling upon motions for directed verdicts, trial Judges must consider the evidence in its most favorable light to the establishment of plaintiff's cause of action. We have examined, at much length and with great care, the testimony, together with the exhibits, which are most enlightening, and it is patent that there was substantial evidence tending to establish the material allegations of the complaint, particularly those which relate to the dangerous nature of the crossing and the alleged negligent obstruction of the view of northbound passengers upon the highway; and, while it is true that the jury, not improperly, perhaps, might have resolved the issues of fact as to proximate cause, contributory negligence, and contributory gross negligence favorably to appellants, all members of this Court are agreed that we cannot say, as a matter of law, that the only reasonable inference to be drawn from the evidence is that the death of respondent's intestate was due to his own contributory negligence and contributory gross negligence, or to that of the party in whose charge he had placed his person. There was no error in submitting these issues to the jury.

Addressing our inquiry to Exceptions 3 and 4, it may be noted that the "Transcript of Record" does not disclose, specifically, upon what grounds the motion for new trial was made in the Court below. Indeed, the only suggestion therein contained, tending to show that a proper basis was laid below for consideration here of these exceptions, is to be found in the following excerpt from the order of the trial Judge, refusing a new trial absolute, but granting a new trial *nisi:* "I reached the conclusion that all the grounds for the new trial, advanced by the attorneys for the defendants, except the excessiveness of the verdict, should be overruled."

This lone reference to the grounds upon which motion for new trial was made is not sufficient, in our opinion, to show that the verdict was assailed below upon the precise grounds, and for the same reasons, now set forth in these exceptions, and, under the rules and decisions of this Court, they might have been disregarded by us had respondent, upon the original appeal, as he did upon rehearing, made such point. Since, however, such exceptions were contested upon the merits, we are of the opinion that we should dispose of them in like fashion.

This Court looks to the substance and not to the shadows, and, although there may be some slight, technical difference in the issues raised by Exceptions 3 and 4, we are of the opinion that, properly analyzed, they present, in substance, the identical point—that there was no sound basis, under the evidence and the charge upon the measure of damages, for the return of a verdict in the sum of $40,000.00, or for as much as $24,000.00, the amount to which it was reduced by the trial Judge, and, therefore, the award of such a "grossly excessive amount" disclosed such prejudice against defendant, or sympathy for the beneficiaries, as to indicate that the "verdict was in no sense the result of the exercise of the sound judgment of the jury, but was the result of such caprice, prejudice, passion or partiality as to demonstrate that defendants had failed to receive the consideration to which any litigant is entitled at the hands of a jury"; or, analyzed and more briefly stated: There was no evidence, under the charge upon the measure of damages, upon which any fair jury could have awarded plaintiff $40,000.00 actual damages, hence a verdict in that sum demonstrated that the jury gave no serious or judicial consideration either to (1) the issues of negligence and contributory negligence, or (2) to the evidence as to the damages sustained by the beneficiaries; and, therefore, defendants did not have a fair trial. It is true that Exception 4 complains only that "there was no sound basis for permitting a final judgment in such grossly excessive amount," but,

if that be so, then there was no sound basis for the verdict of $40,000.00, and, if there were no sound basis for such verdict, then defendants failed to obtain that fair and impartial trial to which every litigant is entitled.

But for the nature of the lower Court's instructions upon the measure of damages, and the failure of respondent to offer evidence as to the actual earning capacity of his intestate, and of the latter's contributions to the support of his wife and son, these exceptions might well have been disposed of, as they have been from the earliest days of this Court, with a mere restatement of the rule that:

"It is well settled that this Court, confined by constitutional limitation to the correction of errors of law in cases of this character, has no power to review and reverse the ruling of the Circuit Judge refusing to grant a new trial upon the ground that a verdict was excessive, unless the appeal record discloses and warrants the conclusion, as a matter of law, 'that the circuit judge's refusal to grant a new trial amounted to manifest abuse of the discretionary power' exclusively vested in him by law to grant new trial for or on account of matters of fact." *Duncan v. Record Publishing Co. et al.,* 145 S. C., 196, 143 S. E., 31, 59, opinion by Mr. Justice Marion; or as expressed by Mr. Justice Cothran, speaking for the Court in *Union Bleaching, etc., Co. v. Barker Fuel Co.,* 124 S. C., 458, 117 S. E., 735, 740.

"This court is without jurisdiction to review a judgment upon the ground alone that the verdict * * * is excessive or contrary to the evidence. If upon a motion for a new trial, it should be made to appear, as a matter of law, an inference from admitted facts, or of facts admitted for the purpose of the motion, that the verdict is excessive, this Court may review a contrary ruling by the trial court;" but, as held in *Duncan v. Record Pub. Co., supra.:*

"Obviously, before an inference can be drawn as a matter of law that a verdict was excessive, or that it was so excessive as to reveal caprice, prejudice, or passion, the facts must be admitted, * * * or, if not admitted, it must be as-

sumed, in so far as the evidence warrants, that the facts are as found by the jury. In the case at bar, since the material facts are not admitted, and the jury has determined all issues of fact in favor of the plaintiff, it must be assumed that the facts are those established by the jury's verdict; and the only question which this court is authorized to consider is whether the circuit judge committed error of law in not granting a new trial upon the ground that the facts are susceptible of no other reasonable inference than that the verdict was so excessive as to indicate that it was the result of prejudice, caprice, or passion, or other consideration not founded on the evidence"; or as said by Mr. Justice Holmes, delivering the opinion of the highest court in the nation in *Southern Railway-Carolina Division v. Bennett*, 233 U. S., 80, 34 S. Ct., 566, 567, 58 L. Ed., 860; *Bennett v. So. Ry. Co.*, 98 S. C., 42, 79 S. E., 710:

"It may be admitted that if it were true that the excess appeared as matter of law—that if, for instance, a statute fixed a maximum and the verdict exceeded it—a question might arise for this Court. But a case of mere excess upon the evidence is a matter to be dealt with by the trial court. It does not present a question for re-examination here upon a writ of error. * * * The premises of the argument for the plaintiff in error were not conclusive upon the jury, and although the verdict may seem to us too large, no such error appears as to warrant our imputing to judge and jury a connivance in escaping the limits of the law." This cause was tried in the Courts of South Carolina under the Federal Employers' Liability Act, 45 U. S. C. A., § 51 *et seq.*, which limits recovery to "pecuniary loss." The evidence disclosed that deceased's wages did not exceed $900.00 per annum. The jury returned a verdict for plaintiff in the sum of $25,-000.00, which was reduced by the trial Judge to $20,000.00, and judgment was affirmed by our Court and by the Supreme Court of the United States.

"It is not within the province of this court, confined by salutary constitutional limitation in such cases to the correc-

tion of errors of law, to set aside the verdict of a jury unless the verdict is so excessive as to warrant the conclusion (1) 'that it is the result of caprice, passion, prejudice, or other considerations not founded in the evidence.' * * * and (2) that the circuit judge's refusal to grant a new trial amounted to manifest abuse of the discretionary power in such matters exclusively vested in him by law." *Southerland v. Davis,* 122 S. C., 511, 115 S. E., 768, 769, opinion by Mr. Justice Marion.

"We hold it to be the settled rule of law in this jurisdiction that the granting of a new trial on the ground that the verdict is so excessive as to show caprice or prejudice is in the discretion of the trial judge, and, unless abuse of that discretion is shown, the order refusing the motion for new trial on that ground will not be disturbed." *Payne v. Cohen,* 168 S. C., 459, 167 S. E., 665, 667, opinion by Mr. Justice Bonham.

"A circuit judge is not compelled to grant a new trial simply because he would have been in favor of a verdict for a smaller sum in case he had been on the jury. All that the law requires of him is the exercise of a sound discretion from which there is no appeal to this court." *Williams v. Tolbert,* 76 S. C., 211, 56 S. E., 908, 910.

"Under the Constitution and statutes, the discretion to control juries in respect to the amount of their verdicts in actions for damages is vested in the trial judges, who, it must be presumed, recognize and appreciate their responsibility, and exercise the discretion vested in them with fairness and impartiality. This court has no jurisdiction to review matters of fact in an action at law; and, therefore, unless a verdict is wholly unsupported by evidence, or is so excessive as to justify the inference that it was capricious, * * * if it is excessive, the responsibility for failure to reduce it must rest upon the trial judge." *Steele v. A. C. L. R. R. Co.,* 103 S. C., 102, 117, 87 S. E., 639, 644, opinion by Mr. Justice Hydrick.

To the same effect are the decisions of the Court in *Huggins v. A. C. L. R. R.,* 96 S. C., 267, 79 S. E., 406, where a verdict for $40,000.00 was rendered and sustained; in *Brickman v. Sou. Ry.,* 74 S. C., 306, 54 S. E., 553, where, under the statute involved in the instant cause, an award of $55,000.00, reduced by the trial Judge to $40,000.00, was upheld with the assertion that (page 557) "We deem it unnecessary to cite authorities to sustain the proposition that this Court cannot consider an exception assigning error that the damages were excessive"; and in *Miller v. Atlantic Coast Line Railroad Company,* 140 S. C., 123, 138 S. E., 675. certiorari denied, *Camp Mfg. Co. v. Miller,* 275 U. S., 556, 48 S. Ct., 117, 72 L. Ed., 424, where a verdict for $50,000.00 was undisturbed for excessiveness with the declaration that (page 691), "We cannot say that the verdict was sufficiently gross and excessive as to shock the conscience of the court so that it should be set aside. The judge heard the case, was familiar with it, and let the verdict stand as the jury rendered it, for actual damages, and we will not review the findings of his honor."

Adverting, however, to the contention that, under the charge of the Circuit Judge, recovery was restricted to actual pecuniary loss, and since there was no evidence of the earning capacity of deceased, or of his contributions to the support of his wife and son, the verdict was so excessive as to indicate that it was "in no sense the result of the exercise of the sound judgment of the jury, but was the result of such caprice, prejudice, passion or partiality as to demonstrate that defendants had failed to receive the consideration to which any litigant is entitled at the hands of a jury,"—that the jury gave no serious or judicial consideration to the issues of negligence, proximate cause, and contributory negligence, and, therefore, defendants did not obtain a fair trial—it is to be observed that our adoption of Lord Campbell's Act, Section 412, Code of 1932, makes no reference whatever to the elements of damage which a jury shall consider, but provides only that "In every such action

the jury may give such damages  *  *  *  as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought." This language necessarily means, however, that the jury may award such damages as, under the evidence, they may think proportioned to the injury. And, as juries are limited in their verdicts by the evidence, so, also, are they restricted by the charge of the trial Judge, even though his instructions may be erroneous.

In the Court below there was submitted to the jury the question of appellant's liability, if any, for actual damages only, and, at the close of his general charge, which included the written requests preferred by counsel for respondent and appellants, the Circuit Judge inquired whether or not either of them desired any further instructions, whereupon counsel for appellants responded as follows: "I don't know whether your Honor will state to the jury what principles shall be applied in measuring damages, or not. I am just making that suggestion. I am not making the request." Thereupon, the following charge was made: "Now, as I stated, gentlemen, the question of the measure of damages in a case is one entirely for you. In other words, only actual damages can be applied here, you cannot apply any punishment, or anything like that, but just to make the party whole. In other words, what was the plaintiff, as I understand it, what was he, the dead man, worth to the people suing, that is about the size of it. That would be the measure of damages. In other words, not from a sentimental standpoint, you cannot apply that, but what was he worth in dollars and cents, from a material standpoint. You recall the age of the son. Now, what was he worth  *  *  *  I cannot tell you one way or the other,  *  *  *  just figure out what the deceased was worth to his family."

And then the trial Judge inquired: "Anything further along that line, Mr. Willcox?" The reply was: "Nothing further, your Honor."

There has been no exception whatever to the lower Court's instruction upon the measure of damages, as quoted above, by any party to the cause; but, in argument, counsel for appellants contend that the charge eliminated from the jury's consideration every element of damage except actual pecuniary loss, and that, in the absence of any evidence as to the earning capacity of the intestate, or of any contributions by him to the support of the beneficiaries, only nominal damages could be awarded; and, founded upon these premises, it is argued that the return of a verdict for $40,000.00 allows no escape from the conclusion that, not only the amount of the award, but the entire verdict— that establishing liability, as well as the sum returned— must have been based upon prejudice, or sympathy, or upon some other consideration which has no place in a Court of justice; and, therefore, this Court should not permit the verdict to stand for any amount, but should set it aside as wholly and completely without support, either as to the amount now involved, $24,000.00, or as to liability.

"It is not essential to a recovery of damages that there should be a pecuniary loss sustained by those for whose benefit the action is brought, nevertheless, such loss may be proved as an element of damages." *Barksdale v. S. A. L. Ry.,* 76 S. C., 183, 56 S. E., 906, 908, but

"When the relation between deceased and the beneficial plaintiff is that of husband and wife or parent and minor child, in the absence of evidence to the contrary, actual pecuniary loss will be presumed from the death." *Gilliam v. Southern Railway Company,* 108 S. C., 195, 93 S. E., 865, 867.

And, unless restricted by the instructions of the Court, eliminating the same from consideration by the jury, the decisions, agreeable to the broad language of the statute, Code 1932, § 412, authorizing the jury to award "such damages * * * as they may think proportioned to the injury resulting from such death," demonstrate that the elements of damage, in actions for wrongful

death, include: (1) Pecuniary loss, (2) mental shock and suffering, (3) wounded feelings, (4) grief and sorrow, (5) loss of companionship, and (6) deprivation of the use and comfort of the intestate's society, the loss of his experience, knowledge, and judgment in managing the affairs of himself and of his beneficiaries, in addition to the loss of his ability to earn money for the support, maintenance, care and protection of his wife and children, and for the education and training of the latter. *Petrie v. Railroad,* 29 S. C., 303, 7. S. E., 515; *Strother v. Railroad,* 47 S. C., 375, 25 S. E., 272 (subsequently overruled as to another principle); *Nohrden v. Railroad,* 59 S. C., 87, 37 S. E., 228, 82 Am. St. Rep., 826; *Stuckey v. Railroad,* 60 S. C., 237, 83 S. E., 416, 85 Am. St. Rep., 842; *Brown v. Railway,* 65 S. C., 260, 43 S. E., 794; *Brickman v. Railway,* 74 S. C., 306, 54 S. E., 553; *Northern Pac. Railroad v. Freeman,* 9 Cir., 83 F., 82, 27 C. C. A., 457. And, since only one action may be maintained, it is proper to include all damages, present and prospective, which are naturally the proximate consequence of the wrongful act. *Bussey v. Railway,* 52 S. C., 438, 30 S. E., 477.

Inasmuch as the beneficiaries in the instant cause are the widow and minor son of the deceased, there is at least a natural presumption, there being no evidence to the contrary, that (1) he contributed to their maintenance and support, and certainly there is a legal presumption that (2) they sustained actual pecuniary loss as a result of his death. *Gilliam v. Sou. Ry. Co., supra.*

However, upon careful and painstaking consideration, we have reached the conclusion that the charge of the Circuit Judge, properly analyzed and construed, did not eliminate from the jury's consideration every element of damage (applicable under our statute and decisions to actions for wrongful death), other than actual pecuniary loss, and that his instructions upon the measure of compensatory damages did not restrict recovery solely to such loss. The words: "What was he worth in dollars and

cents, from a material standpoint," when considered apart from the remainder of such instruction, furnish the strongest basis for appellant's contention, but that expression is not inconsistent with the construction that, with his knowledge of the statute and the decisions of this Court as to the elements of damage, he was endeavoring to impress the jury with the fact that, in giving "such damages as they may think proportioned to the injury resulting from the death," in calculating the value of the several elements of damage, they should estimate the material value of such elements, as distinguished from a mere sentimental value, for, in the same sentence, and immediately preceding those words, he had charged that the damages could not be computed on a sentimental basis. And surely it cannot be denied that mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the experience, knowledge, judgment, care, and protection of a husband and father have a material, as distinguished from a mere sentimental, value.

And it must be noted that, in the same breath, the trial Judge also charged that "The question of the measure of damages * * * is one entirely for you. In other words, * * * make the party whole. * * * What was he, the dead man, worth to the people suing * * * that would be the measure of damages. * * * If you find that there is liability, * * * just figure out what the deceased was worth to his family."

Certainly, when the instruction upon the measure of damages is considered as a whole, it is not susceptible of the narrow construction that respondent's recovery was limited solely to the actual pecuniary loss sustained by the beneficiaries. Indeed, it would seem that a more accurate criticism of the charge would be that, in estimating the damages, the bridle was off and the gate open, for the jury was specifically advised that the measure of damages was for them alone; they were directed to make the beneficiaries whole;

they were instructed to figure out what the deceased was worth to his widow and minor son.

In any event, under decisions too numerous to cite, if more accurate and specific instructions were desired by counsel for appellants, he should have responded to the invitation therefor, directly addressed to him by the Circuit Judge at the conclusion of the charge upon the measure of damages. He was asked if he desired anything further along that line, and replied in the negative. If it be said that he desired nothing further because the charge was, as argued, more favorable to appellants than they were entitled to, then it would seem that, if, as also urged, the evidence warranted a recovery of nominal damages only, such point should have been made below, either by motion for a directed verdict for plaintiff for nominal damages only, or by a requested instruction (when asked if anything more was desired), limiting recovery to such damages. Certainly, the point could have been made below, as well as here, and the failure to make it there permitted appellants to speculate upon the verdict, reserving the hope of a reversal here, if it should prove to be unfavorable to them. And likewise, if it be said that a further requested instruction might have caused the trial Judge to instruct the jury fully as to the several elements of damage applicable to actions for wrongful death, thereby depriving appellants of the alleged favorable instruction which they had theretofore received, we are constrained to say that so much should have been done, for litigation should be upon the merits and under the applicable principles of law, and no proper complaint can be made here that a further request might have resulted in full and complete instructions upon all of the elements of damage.

In this connection it is proper to add that we do not approve, as a proper instruction to be followed in actions for wrongful death, the charge of the trial Judge upon the measure of damages; but it was the yardstick employed in the instant cause without any request from appellants, when offered the opportunity to present the same,

for a limiting or restricting modification thereof; and, since none of the exceptions challenges its correctness and since this Court is confined to a disposition of appeals upon the exceptions taken, our refusal to reverse the judgment upon this ground means nothing more than that such instruction, as we have construed it, becomes, under the circumstances, the law of this case only.

Moreover, we are not prepared to announce the doctrine that, in the absence of evidence as to the earning capacity of one killed by the wrongful act of another, only nominal damages may be recovered, since there is respectable authority to the contrary, when the law presumes a pecuniary loss to the beneficiaries because of their relationship to the deceased.

"Where the law presumes a pecuniary loss to the beneficiaries, substantial damages, it is said, may be recovered without proof of special pecuniary loss. But the general rule is that in order to authorize a recovery of damages for death by wrongful act, the evidence must show the extent and amount thereof, or furnish facts and data as a basis from which the jury may approximate the proper amount with reasonable certainty. Since, however, direct proof of the value of human life is not possible, and what is reasonable compensation therefor must be left to the sound discretion and judgment of the jury, it is not necessary to show the precise money value of the deceased, or the exact amount of damages suffered by the beneficiaries, in order to sustain a recovery of substantial damages where a foundation for the recovery of damages has been laid by the introduction of evidence tending to show the earning capacity of the deceased, or the existence of persons who were dependent upon him for support." 17 Corpus Juris, § 258, pages 1365-1366.

Thus, a wife suing for the negligent death of her husband may recover substantial damages without showing his fortune, his earnings, his capacity to earn, his habits, or his treatment of his family, and she need not show to any degree of exactness his age or the state of his health.

*Voelker v. Hill-O'Meara Construction Company,* 153 Mo. App., 1, 131 S. W., 907.

In a minor's action for the wrongful death of his father, it was held that the trial Court properly refused to confine a recovery to mere nominal damages, even though the evidence failed to show the amount deceased was earning at the time of his death. *Sipple v. Laclede Gaslight Company,* 125 Mo. App., 81, 102 S. W., 608.

And it is worthy of note that an examination of the cases cited in the notes appearing at the foot of the text in 17 C. J., 1365, 1366, purporting to give the general rule on this question, as quoted above, and in the dissenting opinion, will disclose the fact that, in many of the jurisdictions where it is held that proof of earning capacity must be shown to warrant a recovery of substantial damages, their statutes limit recovery to pecuniary loss, while ours does not.

There was evidence that deceased was engaged in the produce business; that, on the occasion when he came to his death, he was accompanied by three of his employees, traveling upon two trucks owned by him; that he had just purchased six tons of cabbage which were being transported to the State of Virginia; apparently, it was not necessary for him to use his son in such business; he was 51 years of age, and in sound health at the time of his death; his widow appeared as a witness for respondent, and both Judge and jury had full opportunity to gather some idea of her station in life, her education, and her refinement and culture, or the lack thereof, and to determine, in some measure at least, whether or not she sustained a nominal or a substantial loss from the death of her husband; and, from her general appearance, her manners, and her demeanor, in the court room and upon the witness stand, considered in connection with the age and health of her husband, the nature of his business, his ownership of at least two trucks, the number of employees engaged in work with him, and his recent purchase of 12,000 pounds of cabbage, to reach a sound conclusion as to what he was worth to his family, as to what sum would

be necessary to make them whole—as the trial Judge had instructed the jury was the measure of damages, if they first reached the conclusion that appellants were liable for his death.

Concerning the suggestion that the return of a verdict for $40,000.00, in the absence of specific instructions as to the several elements of damage which might be considered by them, and the lack of direct testimony as to the earning capacity of deceased, warrants this Court in concluding that the jury gave no serious or judicial consideration to the primary issues of (1) negligence, (2) proximate cause, (3) contributory negligence, and (4) contributory gross negligence, suffice it to say that we know of no decision of the Court of last resort of any jurisdiction, nor has any been called to our attention, which has gone so far as to declare that a grossly excessive verdict indicates that the jury returning the same did not give such consideration to those fundamental issues. And, in the very nature of the secrecy imposed upon a jury's deliberations, it is impossible for a Court, confined by salutary, constitutional limitations to the correction of errors of law only, so to adjudicate. For aught that appears to the contrary, the jury in the instant cause may have given most careful and deliberate consideration to the primary issues of negligence, proximate cause, contributory negligence, and contributory gross negligence before deciding such issues adversely to appellants, and yet made a mistake, if one were made, in estimating the damages. Certainly, there is no suggestion of any basis in the record for an adjudication here that the amount awarded as damages discloses "as a matter of law," or "as a fact susceptible of no other reasonable inference," that the jury did not give proper consideration to the underlying issue of liability.

Nor can we say, although conceding that the verdict was a large one, that the sum awarded is so excessive as to force the conclusion (1) that it was the re-

sult of caprice, passion, prejudice, sympathy, or other considerations not founded in the evidence, and (2) that the trial Judge's refusal to grant a new trial absolute, though exercising his authority to reduce the verdict, constituted a manifest abuse of the discretionary power exclusively vested in him; nor that any "such error appears as to warrant our imputing to Judge and jury a connivance in escaping the limits of the law." *Southerland v. Davis, supra; Bennett v. Sou. Ry., supra; Duncan v. Record Publishing Co., supra; Union Bleaching, etc., Co. v. Baker Fuel Co., supra; Payne v. Cohen, supra; Steele v. Railroad, supra; Huggins v. Railroad, supra; Miller v. Railroad, supra; Brickman v. Railway, supra; Williams v. Tolbert, supra,* and *Bing v. A. C. L. R. R.,* 86 S. C., 528, 68 S. E., 645, opinion by Mr. Justice Woods.

Deceased and his family were residents of the State of Virginia, undoubtedly unknown to the jurors, and there was no occasion for the extension of sympathy to nonresidents; and there is not the slightest suggestion of any fact that should have excited the passion or prejudice of the jury; nor is there any intimation of any other consideration not founded in the evidence which might have influenced the jury. Undoubtedly, jurors, on occasion, make mistakes, as Judges often do. Certainly, they would be superhuman if they did not sometimes err, but, beyond any peradventure of a doubt, the jury system is the most wonderful system that human ingenuity has ever devised for the settlement of disputes between members of organized society, and the composite judgment of twelve citizens, generally selected from as many different communities within a county, upon issues of fact, is more apt to approximate abstract justice than the individual judgment of any one man, no matter how good or learned he may be.

We are of the opinion, therefore, although we have the highest respect for the views of our brethren who do not concur in the conclusions herein reached, that:

(1) There was no error in submitting the issue of liability to the jury—as was agreed to by all members of the Court upon the original hearing;

(2) It is not essential to a recovery of damages for wrongful death that a pecuniary loss should be sustained by those for whose benefit the action is brought, though such loss may be shown as an element of damages;

(3) When the relationship between deceased and the beneficiaries is that of husband and wife, or parent and minor child, actual pecuniary loss will be presumed from the death—in the absence of evidence to the contrary;

(4) The charge of the trial Judge, upon the measure of damages, did not eliminate from the consideration of the jury every element of damage, other than actual pecuniary loss;

(5) Under the statute, the evidence, and the charge, it was within the province of the jury to find that the beneficiaries suffered losses other than those of a pecuniary nature;

(6) If appellants desired more specific instructions upon the measure of damages, or if the evidence, as argued here, warranted a verdict for nominal damages only, request for such instructions should have been preferred when invited by the trial Judge;

(7) When, because of the relationship between deceased and the statutory beneficiaries, the law presumes a pecuniary loss to the latter, substantial damages may be recovered without proof of special pecuniary loss;

(8) An appellate Court, confined to the correction of errors of law only, cannot conclude, from a verdict that is excessive as to amount, that the jury gave no serious or judicial consideration to the primary issue of liability—without invading the constitutional province of the triers of the facts; the most that can be said of an excessive verdict is that the jury erred in fixing the amount, either through passion, prejudice, caprice, sympathy, or some other consideration not founded in the evidence, and, for that reason, the

aggrieved party did not receive that consideration to which every litigant is entitled; and (9) Under the statute, the evidence, the charge of the trial Judge, and the former decisions of this Court, the verdict, concededly a substantial one, is not so large as to warrant the holding here that "the facts are susceptible of no other reasonable inference than that the verdict was so excessive as to indicate that it was the result of prejudice, caprice, or passion, or other consideration not founded on the evidence, and that the Circuit Judge's refusal to grant a new trial (absolute) amounted to manifest abuse of the discretionary power in such matters, exclusively vested in him by law."

A majority of the members of the Court, as constituted for the rehearing of this cause, concurring in the views herein announced, this opinion is substituted for the leading opinion of the Court heretofore filed.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur.

MESSRS. JUSTICES BONHAM and BAKER dissent.

MR. JUSTICE CARTER did not participate on account of illness.

MR. JUSTICE BONHAM (dissenting): Action by respondent in his representative capacity as administrator of the estate of Thomas Hugh Pollard, deceased, for the benefit of the wife and a 19-year-old son, against appellants, and one, W. C. Bruner, who during the progress of the case, was, by a directed verdict in his behalf, eliminated from the case.

Respondent's intestate was the owner of and riding in a vegetable truck driven by his employee, and traveling north from Charleston, S. C., on old U. S. Highway No. 17, and as the truck was driven upon the tracks of the appellant, Atlantic Coast Line Railroad Company, at Heineman, S. C., the tracks crossing the highway at right angles, a passenger train of said appellant, traveling in an easterly direction, collided with or struck the truck, resulting in its demolishment, and instant death to Pollard. The amended complaint of re-

spondent alleges that the damage and injury to and death of his intestate, were caused by, due to, and resulted from the joint and concurrent negligence, carelessness, recklessness, willfulness, and wantonness of the appellants and their agents and employees, in causing the said locomotive and train to approach and go upon said crossing at a rapid, excessive and dangerous rate of speed, although the engineer was fully acquainted with all the dangerous and hazardous conditions at said crossing, created by the acts, defaults and omissions of the appellants; in causing the train to approach and go upon said crossing at a rate of speed as above described without reducing its speed, and without giving the statutory signals or any other signals or warning that it was approaching, and crossing the highway; in unnecessarily and for an unreasonable length of time keeping and maintaining a string of box cars on a spur or side track in close proximity to the highway, which, combining with structures and trees on the south of the railroad, and west of the highway, obstructed the view of eastbound trains on the said railroad track and prevented the operators of northbound motor vehicles approaching said crossing, from seeing or observing the approach of eastbound trains.

The appellants denied all allegations of negligence, carelessness, willfulness and wantonness, and alleged that respondent's intestate, by the exercise of reasonable care or by the exercise of slight care, could have seen and heard the train approaching, yet he negligently, carelessly and with gross carelessness, gross recklessness and gross willfulness, failed and neglected to take the slightest care for his protection, and permitted the truck to be driven into the front of an approaching train, which could have been seen and heard in ample time to have brought the truck to a stop by the exercise of the slightest care; and pleaded contributory negligence, contributory gross negligence, willfulness and recklessness of respondent's intestate and of the driver of the truck in bar of the action.

At the conclusion of the testimony, motion for a directed verdict as to the defendant, Bruner, having been granted, there being no testimony connecting him with the case, the appellants moved for a directed verdict on the ground that the only reasonable inference—the only inference that could possibly be drawn by a reasonable man from all of the testimony, was that the respondent's intestate was as negligent, such negligence contributing as a proximate cause to his injury; was as wanton, if that is possible, such wantonness contributing as a proximate cause of his injury, and was as grossly negligent, such gross negligence contributing as a proximate cause of his injury, as either of the defendants; and that there was no reasonable inference that could be drawn from all of the testimony, but that respondent's intestate and the party in whose charge he had placed his automobile and himself, were grossly negligent, and that such gross negligence contributed to the injury as a proximate cause thereof.

This motion was refused, the Court submitting the case to the jury as to actual damages. The jury returned a verdict against appellants for the sum of $40,000.00.

On motion for a new trial, all grounds therefor were overruled, except as to the excessiveness of the verdict, and a new trial *nisi* was granted unless respondent, within ten days, remitted $16,000.00. This was done, and the judgment stands at $24,000.00.

Appellants come to this Court on exceptions alleging error on the part of the trial Judge in refusing to grant their motion for a directed verdict on the grounds on which it was predicated, and hereinbefore set forth; and in refusing a new trial absolute,

"3. * * * because, in view of the testimony as to extent of the injuries sustained by the beneficiaries, and in view of the charge of the presiding Judge as to the elements to be considered in assessing damages, the amount of the verdict disclosed such prejudice against the defendants or sympathy or partiality for the beneficiaries as to indicate

that the verdict was in no sense the result of the exercise of the sound judgment of the jury but was the result of such caprice, prejudice, passion or partiality as to demonstrate that defendants had failed to receive the consideration to which any litigant is entitled at the hands of a jury."

"4. In not setting aside the verdict and in not granting a new trial absolute on the ground that the amount found by the jury, and even the amount which plaintiff agreed to accept in order to avoid a new trial, was a grossly excessive amount to be allowed for all injuries which could have been found from the testimony to have been sustained by the beneficiaries on account of the death of plaintiff's intestate, and, therefore, that there was no sound basis for permitting a final judgment in such grossly excessive amount."

It will be noted that the question, if appellants were negligent in any of the particulars alleged, is not before the Court. The question is: Can any other reasonable inference be drawn from all the testimony than that respondent's intestate was guilty of such negligence, such gross negligence, without which the injury resulting in his death would probably not have occurred, notwithstanding the alleged negligence of appellants?

Where a defendant sets up the affirmative defense of contributory negligence and gross contributory negligence, the burden of establishing such defense by a preponderance of the testimony rests upon such pleader just as a plaintiff must establish the allegations of his complaint by a preponderance of the testimony. And in passing upon a motion for a directed verdict, the Circuit Judge is required to view the testimony most favorable to the plaintiff.

It would serve no useful purpose to herein review the testimony and describe the surrounding conditions existing at the time of this accident, as shown by the record and exhibits, and since this case must go back for a new trial on another ground, we refrain from a discussion of same. Let it therefore suffice for this Court to say that the testimony and exhibits have been carefully considered, and while it is

a border line case, we cannot say, as a matter of law, that the only reasonable inference to be drawn therefrom is that the death of respondent's intestate was the result of his own contributory negligence and gross contributory negligence, as a direct and proximate cause. It was not error to submit this issue to the jury.

We now come to Exceptions 3 and 4. While we will not discuss these exceptions separately, yet No. 3 raises a quite distinct issue from No. 4.

Section 412 of the Code of 1932 (Lord Campbell's Act), after providing for whose benefit an action for a wrongful act causing the death of a person may be brought, reads in part as follows:

"And in every such action the jury may give such damages * * * as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such a'ction shall be brought."

In arriving at actual damages, the jury may consider mental anguish or suffering by reason of the intestate's untimely death, and the loss of his companionship as a husband and father. *Brickman v. Railway*, 74 S. C., 306, 54 S. E., 553. Actual pecuniary loss does not have to be proven in order to support a recovery under the statute. *Barksdale v. Seaboard Air Line Ry. Co.*, 76 S. C., 183, 56 S. E., 906. Where there is no evidence in a case of any pecuniary loss to the parties in interest, in whose behalf the plaintiff is suing, the jury can only consider such damage as they have suffered, otherwise than from pecuniary loss in making up a verdict (*Barksdale v. Ry. Co.*, supra), but in *Gilliam v. Southern Ry. Co.*, 108 S. C., 195, 199, 93 S. E., 865, it is stated (page 867): "When the relation between deceased and the beneficial plaintiff is that of husband and wife or parent and minor child, in the absence of evidence to the contrary, actual pecuniary loss will be presumed from the death." Citing cases. However, one sued for a wrongful act resulting in the death of another may show that in fact no

pecuniary damages have been suffered by the surviving relatives, and such damages may not then be considered by the jury, if there be no conflict in the testimony. *Gilliam v. Ry. Co., supra.*

In this case respondent's intestate was 57 years of age, in good health, and engaged in the commission business. Whether he conducted a profitable business is not disclosed by the record. From the fact that he accompanied his motor truck on at least some of its trips in hauling produce, the natural inference is that he conducted a limited or small business. He left surviving him a wife and a son 19 years old. The presumption is that they had a pecuniary interest in his continuing to live. There is no testimony as to what amount he contributed to their support, or advised them in the handling of their affairs, if they were engaged in any business.

Following the general charge of the trial Judge to the jury, he read to them respondent's requests to charge, and appellants' requests to charge, and asked of respondent and appellants if either desired anything else. Whereupon, counsel for appellants stated, as follows: "I don't know whether your Honor will state to the jury what principles shall be applied in measuring damages or not. I am just making that suggestion. I am not making the request." The trial Judge, after stating that he was not going into the *Ford case,* as he did not think it was best to do that, charged:

"Now, as I stated, gentlemen, the question of the measure of damages in a case is one entirely for you. In other words, only actual damages can be applied here, you cannot apply any punishment or anything like that, but just to make the party whole. In other words, what was the plaintiff, as I understand it, what was he, the dead man, worth to the people suing, that is about the size of it. That would be the measure of damages. In other words, not from a sentimental standpoint, you cannot apply that, but what was he worth in dollars and cents, from a material standpoint. You recall the age of the son. Now, what was he worth?"

This was the only instruction given the jury on the matter of measure of damages. No other element of damages could have been considered, and the jury brought in a verdict for $40,000.00, as hereinbefore stated. In other words, insofar as the jury trying this case was concerned, the above verdict was rendered on the presumption that the surviving relatives suffered pecuniary damages, and in that amount. Appellants therefore take the position that the amount of the verdict could in no sense have been the result of the exercise of the sound judgment of the jury, and could be indicative of but one thing, and that was that the jury had demonstrated that no serious thought had been given to the rights of appellants, and that appellants had failed to receive the consideration to which any litigant is entitled at the hands of a jury.

We are not at variance with the position of appellants. Before damages could be assessed, the jury had to pass upon at least two issues, (1) Had the respondent proven by the preponderance or greater weight of the evidence one or more of the delicts charged in the complaint, and that such delict was the proximate cause of the death of his intestate, or contributed thereto as a proximate cause; and (2) Was respondent's intestate guilty of contributory negligence, contributory gross negligence, but for which the accident would not have occurred, notwithstanding the negligence of appellants, and combining therewith was the proximate cause of the death of his intestate.

We cannot conceive of a jury, in the absence of any instruction from the Court as to the elements of damages which they could consider, and a total absence of testimony of the earning capacity of the intestate, and of any amounts contributed by him to the support of the beneficiaries, rendering a judgment in the sum of $40,000.00, giving any serious and judicial consideration to the necessarily prior questions above set out.

That a trial Judge may grant a new trial *nisi* is unques-

tioned, but we do not think that the granting of a new trial *nisi* is a "cure all."

In our opinion the trial Judge should have granted a new trial absolute—that it was error to refuse a new trial on the grounds and for the reasons stated in Exception No. 3, which is sustained.

Mr. Justice Baker concurs.

Mr. Justice Bonham (dissenting) : I desire that the following be published as an addition to my opinion in the first hearing.

In the main opinion there is quoted, from 17 Corpus Juris, the following:

*"Where the law presumes a pecuniary loss to the beneficiaries, substantial damages, it is said, may be recovered without proof of special pecuniary loss.* But the general rule is that in order to authorize a recovery of damages for death by wrongful act, the evidence must show the extent and amount thereof, or furnish facts and data as a basis from which the jury may approximate the proper amount with reasonable certainty. Since, however, direct proof of the value of human life is not possible, and what is reasonable compensation therefore must be left *to the sound discretion and judgment of the jury,* it is not necessary to show the precise money value of the deceased, or the exact amount of damages suffered by the beneficiaries, in order to sustain a recovery of substantial damages *where a foundation for the recovery of damages has been laid by* the introduction of evidence tending to show the earning capacity of the deceased, *or the existence of persons who were dependent upon him for support.* 17 Corpus Juris, § 258, pages 1365-1366."

It italicizes the following words:

*"Where the law presumes a pecuniary loss to the beneficiaries, substantial damages, it is said, may be recovered without proof of special pecuniary loss."*

But it does not emphasize the next sentence, to wit:

*"But the general rule is that in order to authorize a recovery of damages for death by wrongful act, the evidence must show the extent and amount thereof, or furnish facts and data as a basis from which the jury may approximate the proper amount with reasonable certainty."*

It is because this general rule was ignored in the trial of the present case, on Circuit, that I am constrained to dissent from the conclusions announced in the main opinion. There was no particle of evidence to show the extent or amount of the pecuniary loss or damage sustained by the beneficiaries of the deceased.

It is left to whim or caprice of the jury, without any definite instruction thereabout by the Court. If the charge of the Circuit Judge on the subject be approved by this Court as the correct definition of the measure of damages in such cases, then in the future, in this jurisdiction, juries may, upon proof alone of the relationship of the deceased and the beneficiaries, award any sum they please within the limit of the amount demanded in the complaint.

It would seem useless to stress the fact that the question of contributory negligence has been passed over without proper consideration.

Under the decisions of this Court, the failure to give the statutory signals is some evidence of willfulness and wantonness.

The trial Judge submitted the cause to the jury only on the question of actual damages. We must therefore conclude one of two things:

Either the Judge thereby held that no other reasonable inference could be deduced from the evidence than that the statutory signals were given, or that the failure to give the statutory signals was no evidence of willfulness and wantonness, and was simply negligence. There being no appeal by the respondent from this holding, it becomes the law of this case. Therefore, if plaintiff's intestate or his agent, the driver of the truck, was also negligent, and his negligence contributed to the injury as a proximate cause, there can

be no recovery. No other reasonable deduction can be made from the evidence than that the driver of the truck and the deceased failed to use the slightest care for their own safety, and that if they had used the slightest care, they were bound to have known that they were approaching a railroad crossing. The evidence shows conclusively that for a distance of at least fifty feet before reaching the railroad track, if either the driver or plaintiff's intestate had merely looked they could not have failed to see the approaching train. The evidence also shows that at the rate of speed at which it is testified they were traveling, the truck could have been stopped before entering upon the railroad track, and yet plaintiff's own testimony shows that there was no attempt to stop the truck by the application of brakes until the moment of the crash.

MR. JUSTICE BAKER concurs.

### ORDER ON PETITION FOR REHEARING

MR. CHIEF JUSTICE STABLER: The suggestion that the majority opinion gave limited consideration to the question of liability in this cause is prompted no doubt by the fact that the testimony was not quoted. However, the issue of liability did receive the most careful consideration of the Justices participating in the majority opinion of the Court, in which it is stated: "We have examined, at much length and with great care, the testimony, together with the exhibits, which are most enlightening, and it is patent that there was substantial evidence tending to establish the material allegations of the complaint, particularly those which relate to the dangerous nature of the crossing and the alleged negligent obstruction of the view of Northbound travelers upon the highway; and * * * we cannot say, as a matter of law, that the only reasonable inference to be drawn from the evidence is that the death of respondent's intestate was due to his own contributory negligence and contributory gross negligence, or to that of the party in whose charge he had placed his person."

There was testimony—whether true or not, this Court has no authority to pass upon—to the effect that the railroad crossing in question was located "in a sink," that "it was dark and a little foggy," that a long string of freight cars, situated upon a spur track, interfered with a vision of the train, that the witness, Huffner, was only 35 yards from the crossing at the instant of the fatal collision, that his hearing is good, that there was nothing whatever that happened that would have prevented him from hearing the statutory signals, and that he did not hear the train blow or the bell ring. It is true that he did not testify, specifically, that the signals were not given, but what more can any honest witness say nine months after such an occurrence than that he was in position to hear, that his hearing was unimpaired, that nothing happened to keep him from hearing, and that he did not hear. Such testimony was admissible under all of our decisions, and tended to establish a failure to give the statutory signals, which, under the decisions, is negligence *per se,* and, presumptively, the proximate cause of injury or death. The witness, Mallison, who, like Huffner, was only 35 yards from the crossing at the time of the collision, also testified that the night was a little foggy, "and in some places it was real foggy," that, although his eyes are good, he did not see any signs warning of the approach to the crossing, and that he heard no signals from the train. Miss Mary Mitchum testified that she lives about 100 feet from the crossing, that she was at home on the night in question, that her hearing is good, that she did not hear the whistle or the bell, and that, if the whistle had blown, she could have heard it. Was the testimony of these witnesses true or false? Under every decision of the Court with which we are familiar the testimony of these witnesses was admissible, as evidenced by failure of defendants' learned counsel to object thereto, and sufficient to carry the cause to the jury on the issue of liability, regardless of the fact that it may have been contradicted by a thousand witnesses. If the jury believed them, as they did,

negligence as a matter of law was established against defendants, which, as stated above, is presumed to have been proximate cause of the intestate's death. The fact that the trial Judge may have erred in not submitting the issue of punitive damages to the jury certainly cannot avail defendants here. Under every crossing-collision case with which we are familiar, testimony of the nature of that referred to above has been held by this Court when properly presented to us, to be sufficient to take the case to the jury on punitive, as well as on actual damages, and the fact that the trial Judge may have erred in not submitting the issue of punitive damages to the jury—although concededly the law of the case on that point because of no appeal from his voluntary ruling thereabout—does not warrant a holding here that such ruling was equivalent to an adjudication by him "that there was no evidence of failure to give the statutory signals, and that simple contributory negligence was a good defense." Wanton conduct on the part of a defendant, which is the proximate cause of injury to another, warrants a recovery of actual, as well as punitive damages, and defendants' counsel recognized that simple contributory negligence was not a good defense under the testimony, as evidenced by defendants' third request to charge. True, under the trial Court's ruling that there could be no recovery of punitive damages, such evidence could not be considered by the jury on any issue of punitive damages, but it could be considered by them on the question of liability for actual damages.

As to the damages that could properly be awarded under the charge of the trial Judge, the Court adheres to its decision announced in the majority opinion.

The petition for rehearing is, therefore, refused.

MR. JUSTICE FISHBURNE and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.

## DISSENTING ORDER ON PETITION FOR REHEARING

MR. JUSTICE BONHAM: For the reasons stated in the first opinion filed in this case; in the dissenting opinion filed following the reargument, and in the petition for another rehearing now being passed upon, it is our opinion that the petition should be granted.

MR. JUSTICE BAKER concurs.